## HARBOUR v. HARBOUR.

### Opinion delivered April 8, 1912.

1. DIVORCE—RESTORATION OF PROPERTY.—Kirby's Digest, section 2684, providing that "in every judgment for divorce from the bonds of matrimony granted to the husband, an order shall be made that each party be restored to all property, not disposed of at the commencement of the action, which either party obtained from or through the other during the marriage and in consideration or by reason thereof," etc., is not applicable to gifts or advancements by a husband to his wife. (Page 278.)

2. HUSBAND AND WIFE—ADVANCEMENT.—Where a husband purchases and pays for lands, taking the deeds therefor in the name of his wife, the presumption is that he intended to make an advancement to her, and the law does not imply a promise or obligation to refund the money or to divide the property purchased or to hold the same in trust for him. (Page 278.)

3. SAME—PRESUMPTION OF ADVANCEMENT—HOW REBUTTED.—The presumption of an advancement where a husband buys land and takes deed to his wife is not conclusive, but may be rebutted by evidence of facts

antecedent to and contemporaneous with the conveyance showing that the intention of the husband was to have his wife hold the land in trust for him and that he did not intend to make her a gift thereof. (Page 279.)

4. TRUSTS—PAROL PROOF.—An express trust can not be proved by parol evidence, nor will such evidence be heard to graft an express trust upon a deed absolute in its terms. (Page 279.)

5. DIVORCE—DISPOSITION OF PROPERTY—Where a husband, during marriage, in consideration of his affection for his wife, procured certain lands to be conveyed to her, and subsequently learned that she had been guilty of adultery, whereupon he secured a divorce from her, he is entitled to have the conveyances cancelled. (Page 280.)

6. SAME—DISPOSITION OF PROPERTY.—Where a husband procured certain lands to be conveyed to his wife in consideration of his affection for her, and subsequently procured a divorce from her on account of her adultery, although equity has no power to make an equitable division of property on decreeing a divorce, it will enforce his expressed intention to make provision for her by giving her one-half of such property. (Page 282.)

Appeal from Ouachita Chancery Court; *John E. Martineau*, Chancellor on exchange; affirmed.

STATEMENT BY THE COURT.

The appellee sued for a divorce, alleging as grounds therefor cruel and inhuman treatment by appellant, such as to endanger his life, and adultery; that he was possessed of property at the time of the marriage, in 1890, from which he realized about ten thousand dollars, and from that and other properties accumulated afterwards, about $17,000 in all; that there were two children born to this marriage, a girl fourteen and a boy eleven years of age, both living with their mother in the town of Bearden, Ouachita County; that he has great affection for and confidence in his wife, and was much subject to her influence on that account; that she began importuning him and systematically continued such importuning for three or four years before the separation, until she finally drove him from home, to convey to her certain property and give to her certain moneys, assuring him all the time that such conveyances made and moneys turned over to her would still remain for the common benefit of the family, subject to his control and for the benefit of both during his life, and that her sole desire in securing the property and money in her own name was that she and their children might be provided for, in case of his death, to the exclusion

of his other children by former wives, who had already been provided for by him. That, having such absolute confidence in and affection for his wife, he was imposed upon and yielded to such importunities and conveyed to her certain lands and delivered to her certain money. That she all the time had no such affection as she professed for him, and simulated it that she might the more easily secure acquiescence on his part and procure the conveyances and property that she had desired, expecting thereafter to rid herself of him after despoiling him of his property. That when she secured the final conveyance of the lots at Bearden, the last home place, she drove him from home, in fear of his life and leaving him, of all the money and property he had accumulated, in his old age, with but about $1,500. That she secured the property by fraud and undue influence and false representation of affection that was only feigned and simulated.

Prayer was for divorce, that the property be restored to him, and that he be given the custody of their two children.

The answer admitted the marriage; denied every allegation of any cruel or inhuman treatment; that any of the property conveyed to her was conveyed with the understanding that her husband should retain control, ownership or management thereof, or that it should be held by her for their joint benefit, or the benefit of the family, or that his intention at the time of the conveyance thereof was other than to transfer same to her as a gift or advancement, and that she should have the absolute title thereto, as shown by the deeds of conveyance; denied the allegations of adultery and improper or immoral conduct on her part and, by way of cross bill, asked for a divorce from appellee because of such indignities offered to her as rendered her condition intolerable, and on account of adultery committed by him with several women, naming them; prayed for a dismissal of the complaint, and that she be granted an absolute divorce and decreed the custody of the two children.

The court granted a divorce to appellee upon his complaint, decreed that appellant have the custody of the minor son until its further order, upon condition that he should not be taken without the State, and that appellee should at all reasonable times be allowed the privilege of seeing him

without interference by appellant; that the deed to appellant for the Calhoun County lands and the two deeds from appellee of date June 25, 1909, conveying certain lots and other lands in the town of Bearden, be cancelled, and invested appellee with an undivided one-half interest in certain lots in the city of Fort Smith, and that each of the parties are entitled to a one-half undivided interest in all the lands that were described in said deeds by the court cancelled, and decreed each to be the owner in fee simple of such undivided half interest; that she have all the household goods and kitchen furniture, and that appellee have and recover of and from her the sum of seventeen hundred and fifty dollars with interest at the rate of six per cent. per annum from the date of the decree, for which he should have execution; and decreed same to be a lien upon appellant's undivided interest in the property situated in Calhoun and Ouachita counties given her by the decree; that certain money deposited in the People's Savings Bank at Little Rock, four hundred dollars, in the name of appellant should be paid upon the order of the court to appellee, and credited upon the amount of the judgment. That all the money deposited in the Fort Smith bank in appellant's name should be divided equally between them.

Both parties excepted to the decree of the court, and from it appealed.

*Warren & Smith,* for appellant.

1. Appellant reviews the evidence, and contends that appellee's grounds of divorce are not proved; that the fault of appellant, if any, occurring while they lived at Fort Smith was condoned by appellee in continuing to live with her after they left there in January until the following June; that the alienation of her affection for him was induced by his own conduct toward her, and that his accusations of adultery, ill treatment, etc., fall to the ground for want of corroboration. 34 Ark. 37; 54 Ark. 20; 38 Ark. 324; 138 S. W. 685; 87 Ark. 180; 83 Ark. 534; 73 Ark. 289; 76 Ark. 28; 77 Ark. 94; 53 Ark. 484; 9 Ark. 507; 38 Ark. 119; 14 Cyc. 631, § 2.

2. Appellee was not entitled to restoration of property. 78 Ark. 346; 73 Ark. 289; 15 Mo. 496; 76 Ark. 389; 80 Ark. 43.

3. The deeds in evidence do not constitute a trust of any kind. 40 Ark. 67; 45 Ark. 381; 70 Ark. 145; 44 Ark. 365; 11 Ark. 82; 88 N. E. 272; 57 Ark. 632; 1 Perry on Trusts, §§ 74, 81, 82; Reed on Statute of Frauds, § 851; 72 Ala. 110; 117 Ill. 18; 119 Ill. 626; 73 Mo. 122; 56 Wis. 221; 2 Ia. 59; 4 Ark. 296; 15 Ves. 375; 37 Ark. 146; 45 Ark. 481; 2 Bibb. 311; 1 Johns. Ch. 339; 57 Ia. 167; Kirby's Dig., § 3666; 42 Ark. 503; 128 S. W. 859; 32 N. J. Eq. 174; 31 Ark. 319; 9 Ark. 488; 10 Ark. 9; 13 Ark. 593; 3 L. R. A. 80.

4. No undue influence is shown. 47 S. W. 117; 60 S. E. 1095; *Id.* 140; 82 N. E. 881; 5 Cur. Law 1732; 3 *Id.* 1525; 104 N. W. 545; 80 Ark. 37; 127 N. W. 264; 125 N. W. 655.

*Powell & Taylor,* for appellee.

1. The evidences of adulterous conduct and in support of the other allegations of the complaint fully sustain the chancellor's decree granting the appellee a divorce.

2. As to the custody of the child, a boy about twelve years of age, the evidence warrants, and the court should have awarded, his custody to the father. 95 Ark. 355.

3. The court was right in cancelling the deeds and ordering a restoration. Appellant's influence and dominion over appellee is fully disclosed by the evidence, her persistent importunities and maneuvers in order to obtain title to the property, and possession of his cash, are undeniable, and through it all runs promise from her to him, often repeated, to hold it in trust for him, and the continual assurance to him that he should have control of the property and money while he lived, to be used or disposed of as he saw fit.

Appellant held the Fort Smith property under a resulting trust. 27 Ark. 628; 40 Ark. 67; 70 Ark. 150; 71 Ark. 373; 84 Ark. 373; 84 Ark. 190; 89 Ark. 580. The property in Calhoun County and in Bearden is held by appellant under a trust *ex maleficio.* 109 Pac. 825 and authorities cited; 72 Cent. Law Journal 78.

KIRBY, J. (after stating the facts.) The record is voluminous, and the testimony conflicting, and no useful purpose would be served by setting it out upon the question of divorce, but it will suffice to say that the chancellor's finding and decree granting the divorce to appellee was not

clearly against the preponderance of the testimony, and will not be disturbed.

It is contended for appellant that the conveyances of the property in Calhoun and Ouachita counties were voluntarily made by her husband as advancements and gifts to her, and that the court erred in cancelling the deeds therefor and also in divesting her of a one-half undivided interest in the Fort Smith property and vesting it in appellee; that appellee was not entitled to the restoration of any of the lands conveyed or the money given to her during the marital relation.

In *McNutt* v. *McNutt*, 78 Ark. 346, the court, construing section 2684 of Kirby's Digest, held that property which the husband conveyed to his wife upon a voluntary separation and also property which he conveyed to her upon a resumption of the marital relations was not obtained from him during the marriage and in consideration or by reason thereof within the meaning of the statute.

In *Thomas* v. *Thomas*, 27 Okla. 784, 109 Pac. 825, the Supreme Court of Oklahoma, construing the same statute, which was in force in the Indian Territory, held that a gift of property from the husband to the wife during the marriage did not fall within the terms of the statute, and that a decree of divorce was not a bar to an action by a former husband or wife against the other to enforce any property right growing out of the marital relation after the final divorce was granted. That the court of the Territory granting a divorce had no power to dispose of property rights between the parties, further than to make an order restoring to each party all property, not disposed of at the beginning of the action, which either party obtained from the other during the marriage and in consideration thereof.

It has been frequently held that where the husband purchased and paid for lands, taking the deeds therefor in the name of his wife, the presumption is that his money, thus used, was intended as a gift to her, and the law does not imply a promise or obligation on her part to refund the money or to divide the property purchased or to hold the same in trust for him. His conduct is referable to his affection for her and his duty to protect her against want, and it will

be presumed to be a gift and, so far as he is concerned, becomes absolutely her property. *Wood* v. *Wood,* 100 Ark. 370; *Womack* v. *Womack,* 73 Ark. 281; *O' Hair* v. *O' Hair,* 76 Ark, 389.

It is true that this presumption is not conclusive, and may be rebutted by evidence of facts antecedent to and contemporaneous with the conveyance showing that the intention of the husband was to have his wife hold the land in trust for him, and that he did not intend to make her a gift thereof. *Chambers* v. *Michael,* 71 Ark. 373; *Milner* v. *Freeman,* 40 Ark. 62.

An express trust, however, can not be proved by parol evidence, and neither will such evidence be heard to graft an express trust upon a deed absolute in its terms. *McDonald* v. *Hooker,* 57 Ark. 632; section 3666, Kirby's Digest; *Bland* v. *Talley,* 50 Ark. 71; *Spradling* v. *Spradling,* 101 Ark. 451.

There could not have been an express trust created for appellant's benefit in the lands conveyed to his wife in Calhoun and Ouachita counties by absolute deeds, neither could a resulting trust arise out of such transaction; although a resulting trust could arise from the purchase of the Fort Smith lands, conveyed directly to the wife, since he furnished $4,500 of the purchase price therefore.

It is not contended by appellee that there was an express trust in the Calhoun and Ouachita county lands for his benefit, nor that such a trust could be created by parol testimony, the deeds being absolute in form and making no mention thereof. His contention is, and the proof tends to show, as the chancellor found, that the conveyances to the other property and half the purchase price of the Fort Smith property were procured by the practice of fraud and deceit upon him by his wife, whom he greatly loved, and in whom he then had the utmost confidence, and that the conveyances were made upon her urgent and continuous solicitation and assurances that it would be held for the common benefit of both and subject to his control for life as though the conveyances had not been made. She intended to and did use the confidential relation existing between them to mislead and impose upon him and despoil him of his property and estate, intending all the time to procure a divorce after securing the

conveyances, or force him to the necessity for doing so, and deprive him of all benefit thereof in his old age.

Many witnesses testified, stating conversations had with appellant shortly after the marriage, in which she said she had no affection or love for her husband, and that she married him for his property, which she expected to get into her hands and under her control. These statements continued to be made from shortly after the marriage until just prior to the last conveyance of the Bearden property by appellee. One witness stated that, after appellant returned from Little Rock, she told her she had had a conversation with her Aunt Mag, who asked her if she had gotten things fixed up yet, and she replied, "No", and her aunt said: "I am surprised at you. I don't know what to think of you. I did think you had some of the old Harcrow blood in you." And she responded: "You just wait. I expect to have it all fixed right yet." That she said she was going to move to Fort Smith, and when she got there she would have things fixed up all right like she wanted them. Another witness heard her say, after they came back from Fort Smith, that she had had a lot of trouble getting his property in her name, but that she had about got it all in her name, and that she was going to run things now.

If it be true that she married and started in with the deliberate intention to simulate an affection she did not feel for a man much older than herself in order that she might acquire the title to his property and despoil him of it and drive him from the home he had purchased and conveyed to her in his utter reliance upon her affection, loyalty and faithfulness to him, or if she later formed such a design and pursued it with such intention to the consummation proved herein, we do not see why it was not such a fraud against his rights that equity should relieve against it.

In *Thomas* v. *Thomas, supra,* the Supreme Court of Oklahoma, after an exhaustive review of authorities, held that, after a final decree of divorce, the former husband who had, during the marriage, because of his trust and confidence in and affection for his wife, had certain real estate conveyed to her, upon learning thereafter that she had, prior thereto, been guilty of adultery, whereupon they immediately sepa-

rated, and he secured a divorce and continued in the possession of the property, could hold said property against the suit of the wife and have the deed therefor to her cancelled, because of the fraud practiced in its procurement, saying:

"The majority of cases between man and wife where questions arising out of constructive fraud, undue influence, or a violation of confidence reposed are involved are generally those wherein the wife sues to secure relief from contracts, gifts, and transactions entered into under the influence of the husband; the cases quoted from above, however, and some others cited are those where the husband was the victim. The principle controlling the rule for relief under either situation is the same. It is that influence has been acquired and abused; confidence reposed and betrayed. It is of no consequence that the one deceived is a man, and the other party a woman. Difference in sex does not create the equities, nor alter the rule. It is the confidential relationship existing between the parties and the fact that the acts done spring from it which create the equities. In the case at bar it appears that the sole consideration for the transfer of this property from the husband to the wife was the affection and confidence which he had in her as his wife. She was not a stranger to him, nor did she pay him any valuable consideration for the property. As he doubtless viewed it, their relationship made them virtually one person, and it was probably a matter of indifference to him whether the title to the property was in her or himself. They were to jointly use it as a continuing, harmonious family. He did not give it to her, nor did she receive it, in contemplation of divorce and separation; the transaction had its life and being in the sacred relationship of husband and wife. Without this it would never have taken place." See, also, *Basye* v. *Basye,* 152 Ind. 172; *Brison* v. *Brison,* 75 Cal. 425, 17 Pac. 689; *Meldrum* v. *Meldrum,* 15 Col. 478, 24 Pac. 1083, 11 L. R. A. 65; *Steven* v. *Wood,* 85 Ill. 603; *Braxill* v. *Braxill,* 230 Ill. 441, 82 N. E. 651; *Evans* v. *Evans,* 118 Ga. 890, 45 S. E. 612, 98 Am. St. Rep. 180; *Holt* v. *Holt,* 23 Okla. 639, 102 Pac. 187.

Appellant in this case told witnesses, after the separation, of the conveyances, and how she procured them, and that appellee conveyed the property upon her solicitation to be

held for herself and family only as against the other children of her husband of his former marriage in case of his death, and that he understood at the time of the making of the conveyances that he was to enjoy the property with them, and control it for life, but that she now had the title to it, and would do with it as she pleased, and see that he did not do so.

We are also constrained to sustain the chancellor's holding that such a fraud was practiced upon appellee in procuring the conveyances for the Calhoun and Ouachita county lands as entitled him to avoid them, and that the purchase money for the half of the Fort Smith property was either procured in the same way, or that it was under such circumstances that a resulting trust arose in his favor for the part of the property purchased with his money, and that the presumption of law that it was a gift to the wife, the deed being taken in her name, was overcome.

Appellant insists that the court, having granted him a divorce on account of appellee's misconduct and sustained his right to avoid the deeds conveying the Ouachita and Calhoun County lands to her, erred, after cancelling these deeds and vesting the title to the land in him, in decreeing an undivided half interest in all of said lands to appellee, and urges that the decree should be reversed, and a decree rendered in his favor for all of said lands.

It is true in *Spurlock* v. *Spurlock*, 80 Ark. 43, it was said; "The court is not clothed with power, as chancery courts are in many States, to make an equitable division of property on dissolution of a marriage," and we will not attribute this division to an attempt to exercise such power, although it may have had such effect, but rather to limiting appellant to an interest in the property no greater than he expected to have and retain upon the payment of the money and the making of the conveyances. It was his intention, then, he says, to provide for appellant and his children by her to the exclusion of his other heirs after his death, and that he should occupy and enjoy the property with them and control it until that time. If a division of it in fact had been made by the parties having such effect, it would have been sustained by the court. *Healey* v. *Healey*, 74 Ark. 94.

Since the bringing of the suit, the daughter of the parties

has married, and, after a careful consideration of the testimony, we do not think that the chancellor erred in awarding the custody of the other child, the boy, to his mother, the appellant.

We find no prejudicial error in the record, and the decree is affirmed.