BLACKWELL *v.* KINNEY.

Opinion delivered July 5, 1915.

1. TAX SALE—PURCHASE BY OWNER'S ATTORNEY—RIGHT OF HOLDER OF VENDOR'S LIEN.—Appellees sold lands to appellants retaining a vendor's lien, the lands were permitted to forfeit for the failure to pay certain taxes, *held*, the appellants could not permit a forfeiture and conveyance of the lands for their benefit, which would operate to defeat appellee's lien, and appellants owe the duty to inform the appellees that the lands had forfeited and that the certificate of purchase could be procured for a certain sum.

2. TAX SALE—PURCHASE BY OWNER'S ATTORNEY—DUTY TO NOTIFY HOLDER OF VENDOR'S LIEN.—Appellees sold certain lands to appellants, retaining a vendor's lien for the unpaid portion of the purchase price; when the appellees pressed appellants for the payment of the balance due, appellants' attorney wrote to appellee stating that he was attempting to procure a loan for appellants and that the money would be paid shortly. In the meantime appellants had permitted the lands to forfeit for the nonpayment of taxes; shortly after writing the letter to appellees, appellant's attorney purchased the certificate of purchase from the purchaser under the tax sale, and later transferred the lands to appellants. *Held*, the parties owed to appellees the duty to notify them of the forfeiture, and sale, and to give them an opportunity to purchase the certificate of purchase, and their failure to do so would not operate to defeat appellees in the assertion of their vendor's lien.

3. FRAUD—INFERENCE—CIRCUMSTANTIAL PROOF.—While fraud will not be presumed, it need not be shown by direct or positive evidence, but may be proved by circumstances.

Appeal from Crittenden Chancery Court; *Charles D. Frierson,* Chancellor; affirmed.

Appellees brought this suit to enforce a vendor's lien against certain lands in Crittenden County, which they sold to John Blackwell and wife, and conveyed to her by a deed reciting the consideration of $4,000 purchase money, the receipt of $1,000 thereof and retaining a lien for the remaining $3,000, evidenced by three promissory notes for $1,000 each, due January 1, 1912, January 1, 1913, and January 1, 1914. Seven hundred dollars had been paid, and was credited on the note first due.

It is alleged that because of the negligence of the Blackwells, the lands were allowed to become delinquent for levee taxes for the year 1911, and sold therefor in January, 1912, and that by connivance and for the purpose of defrauding the plaintiffs of their interest in said notes for the purchase money, the said Blackwells conspired with the other defendants, Campbell, Beck and Shafer, so that the sale should be made to A. T. Gamble and the certificate assigned to Beck and Shafer for the use and benefit of the Blackwells, and that S. C. Blackwell is the owner of the land subject to the lien of the plaintiffs, who are entitled to judgment against the defendants, John Blackwell and S. C. Blackwell, upon the purchase money notes, and to judgment against the other defendants as to their interest in and to the real estate described. Prayer for judgment accordingly, that a lien be declared fixed against the land, and the same foreclosed.

Beck and Gamble answered, denying any conspiracy with either of the Blackwells by an agreement to purchase the land for the benefit of S. C. Blackwell, or any one else, and that the purchase was for their benefit, and alleged that A. T. Gamble purchased the lands at the commissioner's sale and transferred the certificate to Beck, as he

had the right to do, and that the purchase was made for his own benefit.

Shafer entered his appearance as a party defendant and adopted the answer of Beck, denying any conspiracy with any other person in the purchase of the land.

It appears from the testimony that appellees M. E. Kinney and his wife, Cook T. Kinney, who live in Little Rock, sold and conveyed the lands to S. C. Blackwell by deed executed February 8, 1911 for $4,000, $1,000 of which was paid, and retained a vendor's lien for the remainder of the purchase money. Seven hundred and twenty-five dollars was afterward paid, $700 of which was credited on the note due January 24, 1912, and $25 on the second note. They delivered possession of the lands to Blackwell, who was expected to pay the taxes thereon, thereafter. The lands were allowed to become delinquent for the levee taxes for the year 1911, and sold by order of the chancery court for payment thereof in January, 1912, at which sale A. T. Gamble became the purchaser. He thereafter, and after the time for the redemption had expired, sold the certificate of purchase for $500 profit to A. B. Shafer through Wheeler, and it was assigned on the 29th day of June, 1914, in blank and filled out to Beck by Shafer, he and Beck having jointly furnished the money for the purchase according to Shafer's statement.

Gamble testified that he bought a great many lands at the sales for the enforcement of liens for the levee taxes; that he sold the certificate of purchase of these lands through Wheeler to Shafer for $500 more than he paid for them, understanding at the time that the purchase was for the benefit of the Blackwells, the original owners.

Shafer was the attorney for the Blackwells, and had been for the four years they lived in that part of the country, transacting all their legal matters and being consulted by them about all matters in which they were interested. When appellees became insistent for the payment of the balance of the purchase money due upon the land, Shafer, as attorney, wrote Mrs. Kinney and her attorney, the following letters:

"Memphis, Tenn., January 27, 1913.

"Mrs. Cook T. Kinney, 1200 E. 9th St., Little Rock, Ark.

"Dear Madam: Mr. John Blackwell has brought your letter to me.

"I am endeavoring to negotiate a loan for Mr. Blackwell of this property, and as soon as it is negotiated, he will, of course, have to take up the outstanding notes.

"It will take probably thirty or sixty days to negotiate this loan, as the water is very high in front of the levee, and the rainfall has been so heavy it is a bad time to have to show the land to any prospective lender of money.

"I am sure this loan will be made, and, of course, it can not be made without taking up your notes.

"Trusting that you will not put Mr. Blackwell to any more expense in the matter, I am,

"Very respectfully,

"A. B. Shafer."

"January 1, 1914.

"Thos. E. Helm, Atty., Southern Trust Bldg, Little Rock, Ark.

"Dear Sir: I acknowledge receipt of your letter of December 30 relative to the claim of Mrs. Kinney against Mr. John Blackwell. Mr. Blackwell has been through two overflows in Crittenden County and is financially embarrassed. I do not think he will be able to pay the amount due Mrs. Kinney at maturity. I think if he is given an opportunity to work out this indebtedness that he will be able to pay all of it, but he can not do so, if forced, at present.

"I have been endeavoring to negotiate a loan for Mr. Blackwell on this property so as to pay off Mrs. Kinney, but owing to the tight condition of money matters, I have been unable so far to do so. I am in hopes that money matters will ease up within the next few months, and, if so, I do not think I will have any trouble in securing a loan of sufficient amount to pay off Mrs. Kinney.

"Yours very truly,

"A. B. Shafer."

The land had been sold for levee taxes on the 10th day of September, 1912, and the time for redemption had expired. The Blackwells discussed the question of redemption of the lands, or rather the purchase of the certificate, after the time expired, fully and frequently with their attorney, Shafer, who investigated the matter and told them at what price the certificate could be had. He said that Blackwell told him at last that he was not able to get the money to purchase the certificate, and that thereafter he bought the certificate himself, having it assigned in blank and later filled in the name of Beck. That he bought it for himself and Beck jointly, but did not put Beck's name in the assignment until after he had discussed the matter with him and ascertained that it would be agreeable.

He said: "I told Mr. Blackwell that Gamble would transfer the certificate for $500 profit, and he said it was utterly impossible for him to raise that much money, as it looked as though he was going to lose everything he had. I told him unless he would redeem the lands from Gamble, he would lose them, and he said he would have to lose them, that he couldn't raise the money, thereby leaving it open for Mr. Gamble to keep the lands or anybody else who could buy them from him. I then went to Mr. Wheeler, and through him purchased the certificate of purchase from Mr. Gamble, the assignment to be in blank with authority to me to fill in the name of any purchaser that I wanted. I represented Mr. Blackwell, and through him Mrs. Blackwell in the negotiation with Mr. Gamble personally; but when I purchased the land through Mr. Wheeler, I represented J. O. E. Beck in case the matter was satisfactory to him, and, if not, I expected to represent myself, and that was the reason I took the certificate of purchase indorsed in blank. I afterward notified Mr. Blackwell that I bought the land from Gamble for Beck. Beck then said the purchase was satisfactory to him, and I rented the land to Blackwell for the balance of the year 1914. I think it was some time in March that I made the lease to Mr. Blackwell. He paid part of the rent, but not all of it."

Shafer was made trustee in a deed of trust of certain Tennessee lands, executed by Mrs. Blackwell about two months after he purchased the certificate of purchase of these lands, to secure the payment of certain indebtedness to other creditors, and also a fee to him of $2,500. Explaining this, he said he thought the fee reasonable, that it had nothing whatever to do with the repurchase of these lands from him, but was for services already rendered and to be rendered in future to the Blackwells. He also said that Blackwell continued in the possession of the lands as a tenant. She stated, "It was for legal services for looking after and giving us general information, which he has been doing for the last five years." She also said that she supposed that she still owned the Arkansas lands. Her husband was operating them as he had done formerly, and the chickens and stock and other things were still on the place. Her testimony is vague, however, indicating that she knew but little about any of the transactions except as conducted by her husband and attorney for her.

Blackwell stated that he had made about $5,000 worth of improvements upon the lands, all of which were situated upon that portion included in the certificate of purchase at the tax sale. He also testified that he endeavored to procure a loan to buy the certificate of purchase after his attorney, Mr. Shafer told him the amount required; but was unable to do so. He did not, however, notify the appellees, or either of them, that the lands had forfeited for taxes, and that the certificate of purchase could be procured for the amount of which he had been informed by Shafer, the time of redemption having expired. Neither did Shafer communicate this information to appellees before purchasing through Wheeler the certificate of purchase, and having it assigned in blank, so he could afterward fill in the name "Beck."

The chancellor found the issues in favor of the appellees, and decreed a sale of the lands for the payment of the notes secured by the vendor's lien after payment of amount appellees paid for the certificate of purchase, from which this appeal has been prosecuted.

*Roleson & McCulloch,* for appellants.

1.   There was and is no trust relationship between Shafer and the appellees.  He was never their attorney, Gamble did not represent them and Beck did not know them.  The Blackwells, if they desired to do so, would be in no position to complain, because Shafer conducted himself toward them with the utmost good faith, informed them of all the facts, and purchased from Gamble only after Blackwell told him that he could not get up the money and left Shafer free to buy if he saw proper.

His title was good, under his purchase, even against the Blackwells, in the absence of a showing that they had entrusted him with funds with which to make the purchase, or had agreed to act as their agent, or had concealed the conditions from them; and as to third parties, the law governing the relationship between attorney and client has no place in the case.  29 Ark. 489; 4 Cyc. 958, 959, note 79; 20 Ark. 583; 22 Ark. 143; 49 L. R. A. (N. S.) 1059; 29 Am. & Eng. Ann. Cases, 212; 85 N. W. 322.

2.   Any question of fraud in the transaction by which Shafer acquired the title must rest upon the theory that he actually bought the land for Blackwell, that the latter still owns it, and that Shafer and Beck are holding the land for him.  As to appellees, no duty rests upon Shafer to establish the fairness of the transaction, but the burden rests upon appellees to show the fraud, clearly.  It will never be presumed.  11 Ark. 378; 17 Ark. 151; 33 L. R. A. (N. S.) 839; 92 Ark. 509; 20 Cyc. 413; 9 Ark. 485; 1 Story, Equity, § 190; 31 Ark. 554.

*Bradshaw, Rhoton & Helm,* for appellees.

1.   Appellants are mistaken in their contention that there was no pre-existing trust relation between Shafer and appellees.  He was the attorney for the Blackwells in this matter, and it was by means of his letters to the Kinneys and their attorney that he induced them to withhold pressing their claim against the Blackwells until the statute of limitations had run, and the tax sale to Gamble had become good.  The testimony clearly shows that he was mixed up both with the Kinneys and the Blackwells in this

transaction, and he can not, after placing himself in the attitude of dealing with both parties and causing the Kinneys to delay pressing their claim, take advantage of them by purchasing the property for his own benefit. Knowing the interest of appellees in the lands, he was under the duty to inform them that the certificate of redemption could be purchased from Gamble for $500.

Shafer and Beck hold the land in trust for the Blackwells and appellees, their creditors. 74 Ark. 93; 75 Ark. 273; 99 Ark. 543.

2. The transaction was fraudulent, and can not stand. The mere fact that Blackwell remains in possession of the land, after he claims to have no interest in it, is a circumstance tending to show a secret trust, and a badge of fraud. 33 Ark. 328; 74 Ark. 186. Likewise, Shafer's concealment of his own identity by taking the certificate of purchase in the name of Beck was, especially under the circumstances, an indication of a secret trust—another badge of fraud. 26 Ark. 445; 53 Ark. 191.

The evidence is convincing that Shafer bought the certificate for Blackwell for the purpose of defrauding appellees out of their interest in the land. 57 Ark. 563.

It is true that at law, fraud must be proved; but it is sufficient in equity to show facts and circumstances from which it may be inferred. 33 Ark. 425; 24 Ark. 222. See, also, 41 Ark. 372; 92 Ark. 509; 112 Ark. 341.

KIRBY, J., (after stating the facts). Appellant contends that the purchasers of the certificate of purchase at the tax sale occupied no position of trust and owed no duty in relation to the land purchased to the appellees holding the vendor's lien for the remainder of the purchase money due thereon, that required him to give notice to appellees of the condition before purchasing the certificate or prevent their buying same and holding the lands.

It is true that Shafer was not the attorney of appellees at the time of his purchase of and the assignment of the certificate of purchase to him, and that he had never been their attorney, but that fact would not necessarily relieve him from any duty to inform the appellees that

the lands had been forfeited and sold for taxes, and the amount required to purchase the certificate of purchase.

The undisputed facts are that appellees, the former owners of the land, had a vendor's lien thereon to secure the payment of the balance of the purchase money, that the Blackwells were in possession of the land under their conveyance and bound to the payment of all the taxes thereon; that they permitted the lands to become delinquent for the levee taxes which were afterward sold at a foreclosure sale; that A. B. Shafer was the attorney of the Blackwells in all matters, and that he wrote the two letters to appellees as their attorney, set out in the statement of facts, assuring them when they became insistent for the payment of the balance of the purchase money that he was endeavoring to negotiate a loan on the Blackwell property, which he felt sure would be procured in from thirty to sixty days from then, January 27, 1913. and asking that his client be put to no further trouble and expense.

Later, on January 1, 1914, he wrote to appellee's attorney, informing him of the financial condition of the Blackwells; that they would not be able to pay the amount due the Kinney's at the maturity of the notes, but that if Blackwell was given an opportunity, he would do so; that he had failed to procure the loan of which he first wrote, but hoped that money matters would ease up within a few months, and, if so, did not think he would have any trouble in securing a loan of sufficient amount to pay the indebtedness.

The lands had been sold for taxes in September, 1912, and the time for redemption had expired when Shafer's last letter was written, and on the 28th day after writing said letter, he purchased the certificate of purchase of these lands sold at the tax sale for less than $800, and had it assigned in blank that he might afterward fill in the name of appellant, "Beck," if he desired to join in the purchase. He had often before discussed the condition with Blackwell, investigated the records to see whether the tax sale was regular, and concluded it was, and advised him to buy the certificate of purchase which Black-

well informed him he could not do, being unable to procure the money therefor.

Shafer stated he represented the Blackwells, when he personally talked with the owner of the certificate of purchase about buying it, but that he represented Beck or himself, when he bought the certificate of purchase of Gamble through Wheeler, and had it assigned in blank. He gave his individual note for the purchase money, and rented the lands to Blackwell for the year, and said that Blackwell had paid some of the rent. There was in fact, no appreciable change of possession, and Mrs. Blackwell stated that she supposed she still owned the lands as her husband was operating them as he had formerly done.

The evidence also discloses that shortly after the transfer of this certificate of purchase, Mrs. Blackwell conveyed to Shafer, as trustee, certain of her lands and property situated in the State of Tennessee, securing thereby along with indebtedness to others a fee of $2,500 to him. He testified that this had no relation whatever to the purchase of the lands in controversy, nor of their sale to the Blackwells, or his holding them for their benefit, that it was for professional services already rendered and to be subsequently rendered. The Blackwells did not notify appellees that the lands had forfeited and been sold for taxes, and that the certificate of purchase could be acquired upon the payment of a certain sum therefor, neither did Shafer give them any information of this fact, but bought the certificate of purchase twenty-seven days after assuring them that Blackwell would be able to pay the lands out if given time, and holding out the hope that he would shortly be able to negotiate a loan for him on the lands and take up the notes. Blackwell could not have permitted the land to forfeit for taxes and procured it to be bought in by another person for his benefit, and escaped the enforcement of appellee's lien thereon against the land. *Randolph v. Nichol,* 74 Ark. 93.

An insolvent debtor will not be allowed to permit his lands to forfeit for taxes and be bought in, in his wife's name with her means even, to defeat the payment of his debts, and such transaction will be treated so far as his

creditors are concerned, as a redemption in effect of the lands by him. *Herrin* v. *Henry,* 75 Ark. 273; *Fluke* v. *Sharum,* 118 Ark. 229.

(1) The Blackwells were bound to the payment of taxes upon the land, and they could not permit a forfeiture and conveyance thereof for their benefit that would have operated to defeat the lien of their grantors, and they owed the duty to inform appellees, the holder of the lien for the balance of the purchase money of the sale of the lands, of the fact that the certificate of purchase could be procured for a certain sum, which they were unable to pay, in order that appellees could make the payment and protect their interest.

(2) Shafer acquired all the information relative to the tax sale of the lands, finally resulting in his purchase of the certificate of purchase, the effect of which was to defeat the lien of appellees for the purchase money of the lands by reason of his relationship to appellees' grantees as their attorney, and as their attorney he also knew when he bought the certificate, that if the transaction was valid, it would defeat appellees in the collection of their debt from the Blackwells, which he had only twenty-seven days before assured them would be paid if the Blackwells were given time, and he himself hoped to be able to procure for them a loan on the lands, with which to make the payment. Under these circumstances, he owed the duty to appellees to inform them that the certificate of purchase could be had for the price demanded by the holder of it, and that the Blackwells were not able to procure the money with which to buy it before he could buy for himself and defeat their claim. He did not notify them of the fact and knew that the Blackwells had not done so when he purchased the certificate through another person, and had it assigned in blank, and equity will not permit him to defeat the lien of appellees by any such transaction, regardless of what his intentions in fact may have been in the purchase. He stands in no better position than his principal Blackwell would have occupied had the certificate been purchased by and transferred to him,

who, of course, could not have defeated appellee's lien thereby.

(3) Although it is true that fraud is never presumed, and when a transaction does not necessarily import fraud and may as well have occurred from a good as a bad motive, that fraud will not be inferred; still fraud need not be shown by direct or positive evidence, but may be proved by circumstances. *Irons* v. *Reyburn*, 11 Ark. 378; *Splawn* v. *Martin*, 17 Ark. 151; *Phelan* v. *Dalson*, 14 Ark. 79; *Russell* v. *Brooks*, 92 Ark. 518.

It may be conceded that the certificate of purchase was purchased by Shafer without any intention in fact to defraud the appellees or defeat the enforcement of their lien against the lands, and also without any agreement or intention to resell the lands to the Blackwells or hold them for their benefit, but should the law sanction the transaction disclosed by the record, it would in effect permit him to defeat them of their right and deprive them of their lien under such circumstances as would amount to legal fraud, and upon the testimony in the record, with the inferences fairly deducible therefrom, we are not able to say that the findings of the chancellor are clearly against the preponderance of the testimony. The decree is affirmed.

SMITH, J., dissents.