BIDDLE *v.* BIDDLE.

4-7199                                    177 S. W. 2d 32

Opinion delivered January 17, 1944.

*C. T. Carpenter,* for appellant.

*Bon McCourtney* and *T. J. Crowder,* for appellee.

KNOX, J.   On March 12, 1941, appellee, a man then 79 years of age, and appellant, a woman then 31 years of age, were married. Appellant explained her reason for marrying appellee as follows: "Because he wanted me to, it was a mutual business relationship. He needed a home, my children needed a home, and I did not have to work." Appellee had been married once previously, his wife had died and his children were all grown. Appellant had been married twice before, and had obtained a decree of divorce from each of her husbands. She was the mother of two small boys eight and five years of age, one by each of her former divorced husbands. At the time of the marriage appellee was, and for many years prior thereto had been, employed as a telegraph operator for the Cotton Belt Railroad, at a salary of approximately $200 per month. This employment continued until the third of March of the year succeeding his marriage, when he was retired on a pension of $75.61 per month.

During the lifetime of his former wife appellee had acquired some property, including a two-story house, situated in one of the best residential districts in the city of Jonesboro, Arkansas, which property he and his former wife occupied as their homestead. After the death

of his first wife appellee, together with other members of his family continued to occupy said property as his homestead, and appellee was so occupying said property at the time he and appellant were married. Immediately after the marriage appellee took appellant and her two children to his home, where they all resided until the separation, and since such time appellant has continued to occupy the same. The house is large and has been arranged so as to permit the renting of parts thereof for apartments, and since the separation appellant has been renting out these apartments and collecting and receiving for her own use and benefit the rents accruing therefrom. This homestead property is described as lot 3, block 2 of Culberhouse's Third Addition to the city of Jonesboro.

At the time of the marriage appellee also owned a piece of property situated on Monroe street in the city of Jonesboro, which property he exchanged for a tract of land, consisting of 15 lots, together with a dwelling house and other improvements thereon, described as lots 46 to 60, both inclusive, Johnson's Subdivision of lot 12 of Center & Company's Addition to the city of Jonesboro. This property is referred to throughout the transcript as the "Radio Hill property," and will hereinafter be so designated. At the time the exchange was made the title to the "Radio Hill property" was taken jointly in the names of appellee and appellant, thus creating an estate by the entirety. Later the parties executed a conveyance to a third person, who on the same date reconveyed said property to appellant. Appellee testified that the original exchange was made at the urgent insistence of appellant, and that later she became dissatisfied with the fact that the conveyance had vested title in the two, and that she continued to nag and abuse him until he finally consented to and did place the title to this property in her name. Appellant, on the other hand, testified that the original exchange of the property, and, also, the change from an estate by the entirety in the two to a fee simple estate in her as the sole owner

was in each instance the voluntary act of the appellee, and was not induced by any action on her part.

On January 27, 1942, appellee adopted the two minor children of his wife.

Appellee testified that for several months after the marriage appellant treated him with consideration and kindness, but that later her attitude towards him changed, and that thereafter she treated him with such indignities as to render his condition in life intolerable, and as a result of such mistreatment he was forced to, and did on May 8, 1942, leave appellant.

On September 30, 1942, appellee instituted this suit for divorce on the ground of cruel treatment, and in his complaint he also prayed that the title to the "Radio Hill property" be vested in him and that he be given possession of the homestead and the furnishings therein.

Appellant did not at first pray for a divorce, but asked only that the complaint be dismissed and that plaintiff be required to contribute monthly to the support of herself and her children. On January 30, 1943, appellant filed an amendment to her cross-complaint, in which she prayed that she be granted a divorce; that she be awarded "as her permanent home" the homestead property, a reasonable amount for the support of herself and children, attorney's fees and costs, and general relief. None of the pleadings filed by appellant contained specific prayer for alimony, dower, or division of property, but throughout her pleadings she has prayed that she be awarded the homestead property as her permanent home.

After the completion of the proof the lower court entered a decree: (1) denying appellee's prayer for divorce; (2) granting appellant a divorce on her cross-complaint, awarding her the custody of the two children and requiring appellee to contribute $40 per month for the support of the minor children; but the court further decreed that title to the Radio Hill property should be divested out of appellant and awarded to appellee, and further that appellee should have possession of the homestead property, and that he should have all the household

goods and furnishings owned by him at the time of the marriage. The decree further provided that the award of $40 per month should begin when possession of the property ordered restored to appellee had been delivered to him. From this decree the appellant, Estelle Biddle, prosecutes this appeal.

Appellant's prayer for an appeal is general in its terms. At page 4 of appellant's brief, however, her counsel say: "From that part of the decree depriving her of the Radio Hill property, the home and furnishings defendant appeals." Thus the matters presented for review are limited to those included within that statement.

Appellee, J. A. Biddle, does not seek a review of the action of the trial court in denying his prayer for divorce, or in granting the appellant a divorce on her cross-complaint. The relative faults of the parties resulting in the separation is, therefore, not a matter for consideration of this court for any purpose other than in determining the correctness of the action of the chancery court in awarding alimony or settling property rights between the parties. *Upchurch* v. *Upchurch,* 196 Ark. 324, 117 S. W. 2d 339.

As before stated, the trial court awarded title to and possession of the Radio Hill property to appellee. While § 4393 of Pope's Digest does provide that in every final judgment for divorce each party shall be restored to all property which the other party obtained from or through him or her during the marriage and in consideration or by reason thereof, it has been held that such provision of the statute does not apply to property which the husband conveyed to the wife for love and affection. *Dickson* v. *Dickson,* 102 Ark. 635, 145 S. W. 529; *Glover* v. *Glover,* 153 Ark. 167, 240 S. W. 716. Likewise, it has been held that this statute is not applicable to gifts or advancements made by the husband to his wife, and where a husband purchases land and takes the deed therefor in the name of his wife there is a presumption that he intended to make an advancement to her, and the law does not imply a promise or obligation on her part to refund the money or to divide the property purchased, or to hold the

same in trust for him, which presumption is not conclusive but may be rebutted by evidence of fact showing a contrary intention. *Harbour* v. *Harbour,* 103 Ark. 273, 146 S. W. 867.

In the last mentioned case of *Harbour* v. *Harbour, supra,* title to property which had been conveyed to the wife was in the divorce decree vested in the husband upon allegation and proof that the wife had obtained the property as a result of fraud practiced by her upon the husband. In that case Mr. Justice KIRBY, speaking for the court, says: ''His contention is, and the proof tends to show, as the chancellor found, that the conveyances were procured by the practice of fraud and deceit upon him by his wife, whom he greatly loved, and in whom he then had the utmost confidence, and that the conveyances were made upon her urgent and continuous solicitation and assurances that it would be held for the common benefit of both and subject to his control for life as though the conveyances had not been made. She intended to and did use the confidential relation existing between them to mislead and impose upon him and despoil him of his property and estate, intending all the time to procure a divorce after securing the conveyances, or force him to the necessity for doing so, and ·deprive him of all benefit thereof in his old age.'' After making specific reference to certain parts of the testimony tending to disclose fraud on the part of the wife, Judge KIRBY continues: ''If it be true that she married and started in with the deliberate intention to simulate an affection she did not feel for a man much older than herself in order that she might acquire the title to his property and despoil him of it and drive him from the home he had purchased and conveyed to her in his utter reliance upon her affection, loyalty and faithfulness to him, or if she later formed such a design and pursued it with such intention to the consummation proved herein, we do not see why it was not such a fraud against his rights that equity should relieve against it.''

Counsel for appellee argue that the facts presented by the record in the case at bar are so similar to the

facts presented in the case of *Harbour* v. *Harbour, supra,* that the decision of the prior case is controlling here. Evidently the trial court was of the opinion that the facts here brought this case within the rule of *Harbour* v. *Harbour,* and for that reason he deprived the appellant of title to the property and vested title thereto in appellee. We are of the opinion that the trial court erred in this regard. There are many points in which the facts of the two cases differ, which distinction calls for the application of different rules. In the Harbour case the husband obtained a decree of divorce on account of the misconduct of the wife. In the case at bar the husband's prayer for divorce was denied, and the wife obtained a decree of divorce based upon the misconduct of the husband. In the Harbour case there was proof of fraudulent promises actually made by the wife to the husband to induce him to make the conveyances to her. In the case at bar the appellant testified that the conveyance was the voluntary act of the appellee, and that she did nothing to induce him to convey the property to her. Counsel for appellee have failed to call to our attention any evidence appearing in the record disclosing statements or promises by appellant to induce appellee to make this conveyance. In the Harbour case statements made by the wife to others prior to the separation of the parties disclosed that she was making false representations to her husband as a part of the fraudulent scheme designed to obtain his property. In the case at bar no such evidence appears.

It must be remembered, however, that the rule announced and applied in the Harbour case is based upon allegation and proof of fraud upon the part of the wife in obtaining title to the property from or through the husband. There is no rule more firmly established than the one that fraud will not be presumed, and the burden is on the party alleging it to prove it by preponderance of the evidence which is clear and convincing. *Irons* v. *Reyburn,* 11 Ark. 378; *Home Mutual Benefit Ass'n* v. *Rowland,* 155 Ark. 450, 244 S. W. 719, 28 A. L. R. 86; *U. S. Ozone Co.* v. *Morrilton Ice Co.,* 186 Ark. 485, 54 S. W. 2d 282; *Russell* v. *Brooks,* 92 Ark. 509, 122 S. W. 649; *Crider* v. *Simmons,* 192 Ark. 1075, 96 S. W. 2d 471.

While fraud need not be shown by direct or positive evidence but may be proved by circumstances (*Blackwell v. Kinney,* 119 Ark. 578, 180 S. W. 757) it must reasonably and naturally follow from circumstances proved. *Hartsfield v. Crumpler,* 174 Ark. 1179, 297 S. W. 1021. Circumstances of mere suspicion leading to no certain result are not sufficient grounds to establish fraud. *Erb v. Cole,* 31 Ark. 554; *Bank of Little Rock v. Frank,* 63 Ark. 16, 37 S. W. 400, 58 Am. St. Rep. 65.

The record here wholly fails to present clear and convincing evidence of a fraudulent plan or scheme on the part of appellant to obtain the property of the appellee through a simulation of an affection for him which she did not feel. The very most that could be said in this regard is that some of the facts disclosed by the record induce a suspicion that appellant's attitude toward appellee was prompted by motives which were not entirely free from guile. Such evidence is not sufficient to support a finding of fraud, and we are of the opinion that the trial court erred in awarding the Radio Hill property to appellee.

Appellant argues that the action of the trial court in awarding possession of the homestead and the furnishings therein to appellee constituted error. In the case of *Wood v. Wood,* 59 Ark. 441, 27 S. W. 641, 28 L. R. A. 157, 53 Am. St. Rep. 42, and again in the case of *Taylor v. Taylor,* 153 Ark. 206, 240 S. W. 6, this court cited the case of *Barrett v. Failing,* 111 U. S. 523, 28 L. Ed. 505, to the effect that unless otherwise provided by local law a decree of divorce by a court having jurisdiction of the cause and of the parties dissolving the bonds of matrimony puts an end to all obligations of either party to the other, and that such decree cut off the wife's right of dower and the husband's tenancy by the curtesy. At the time of the commencement of the suit in the case of *Wood v. Wood, supra,* the act, which is now § 4393 of Pope's Digest, was not in existence, but the same was enacted while that case was pending and before the filing of the amended bill therein. It will be noted that § 4393 of Pope's Digest specifically provides that where the wife

is granted a divorce against the husband she shall be entitled to one-third of his personal property absolutely and one-third of his lands for life. In the case of *Taylor* v. *Taylor, supra,* Mr. Justice HART described the award to the wife required by this statute as being "in the nature of dower." No duty is imposed upon the trial court by this statute, or any other statute which has been brought to our attention, to make any specific award of the homestead to the wife obtaining a decree of divorce. It is well settled that in the absence of statutory provisions to the contrary the wife has no homestead rights in the husband's property after a divorce unless the right thereto is reserved to her by the decree, and it makes no difference in this regard whether the decree was obtained by the husband or by the wife. 29 C. J. (Homestead), p. 934, § 347; 17 Am. Jurisprudence (Divorce), § 642, p. 491; 27 C. J. Cecundum (Divorce), § 294, p. 1123. The reason for the rule as stated in Am. Jurisprudence, *supra,* is that "On divorce the wife ceases to be a member of the family to the same extent as if she were dead and thereby loses claim on or right to the same as a homestead." It has been held that the court on granting a divorce may treat the homestead as any other property. 27 C. J., § 294, p. 1123; *Hamm* v. *Hamm,* 98 Kan. 360, 158 Pac. 22; *Harden* v. *Harden,* 182 Okla. 364, 77 Pac. 2d 721; *Hedtke* v. *Hedtke,* 112 Tex. 404, 248 S. W. 21. In the case of *Benson* v. *District Court,* 57 Idaho 85, 62 Pac. 2d 108, it was held that the commencement of a divorce action at once subjects the homestead to the court's jurisdiction.

An examination of our own cases clearly discloses that courts granting decrees of divorce may award the possession of the homestead to either of the parties for such time and upon such terms and conditions as appear to be equitable and just. Such is the effect of our decisions in the cases of *Heinrich* v. *Heinrich,* 177 Ark. 250, 6 S. W. 2d 21; *Watson* v. *Poindexter,* 176 Ark. 1065, 5 S. W. 2d 299; *Woodall* v. *Woodall,* 144 Ark. 159, 221 S. W. 463; *Johnson* v. *Commonwealth Bldg. & Loan Ass'n,* 182 Ark. 226, 31 S. W. 2d 136; *Wilkerson* v. *Hoover,* 192 Ark. 337, 91 S. W. 2d 274.

It is true that in most, if not all, of our cases the wife has been awarded possession of the homestead, especially where she was the innocent party and obtained the divorce, but it does not follow that when the equities of the case require it the court cannot make a different disposition of the homestead.

In the case at bar appellant testified that she married the appellee so that she and her children might have a home. The appellee has purchased and given to her the Radio Hill property, which apparently is suitable for the use and occupancy by appellant and her children as their homestead. It is true that the decree of the trial court divested her of title to this property, but, as before stated, we are of the opinion that the court was in error in this regard, and under the directions here her title thereto will be confirmed. Under the circumstances of this case it seems to us that an adjustment of the equities between the parties does not require that the decree made by the court with respect to the homestead should be disturbed. Appellant and her children may occupy as their home the Radio Hill property and appellee may return to the home which he had owned many years prior to his marriage to appellant.

As heretofore pointed out, no pleading filed by appellant contained the specific prayer for dower. In her reply brief filed in this court counsel for appellant for the first time in the entire proceeding raised the question of appellant's right to dower under § 4393 of Pope's Digest, and say that if the court should find that appellant should be denied the use of the home and that the Radio Hill property should be taken from her then she is entitled to one-third of each. In the case of *Crosser* v. *Crosser*, 121 Ark. 64, 180 S. W. 337, it was held that an exception to the assignment of the statutory allowance to a wife who has procured a divorce from her husband, which was not brought to the attention of the chancellor, will not be considered for the first time on appeal.

Doubtless if appellant had properly presented the matter for determination in the trial court she would have been entitled, under the provisions of § 4393 of

Pope's Digest, to an assignment of a one-third interest for life in the real estate of her husband, which real estate consisted of his homestead. Since, however, she at no time brought this matter to the attention of the chancellor she cannot now be heard to claim such right for the first time on appeal in this court.

While under some circumstances a different rule applies, the court usually will limit the relief granted to the cross-complainant to that prayed for in the cross-complaint for divorce. 27 C. J., Divorce, § 706; *Davis* v. *Davis,* 209, Iowa 1186, 229 N. W. 855; *Cawley* v. *Cawley,* 59 Utah 80, 209 Pac. 10.

In the case of *Wood* v. *Wood, supra,* this court had under consideration the act which is now § 4393 of Pope's Digest, and in commenting upon the necessity for assertion in the complaint of the right of the wife under such section the court stated: "Appellant did not undertake to show in her original or amended bill for divorce that she was entitled to the benefit of the act of March 2, 1891." (Pope's Digest, § 4393.) ". . . Nothing appears in the record outside of the evidence to show that the court committed an error of law in failing to divide the estate of the husband in accordance with the act." It would seem from the language quoted that the court was of the opinion that a wife who desired the benefits of this act should assert her claim thereunder in her original or amended bill for divorce. In the later case of *Taylor* v. *Taylor, supra,* where the same statute was again under consideration, Mr. Justice HART says that the wife, "has no right to complain in this court that she did not obtain relief which she neither asked nor desired in the chancery court."

Appellant next contends that the court erred in awarding to appellee the furniture which was in the homestead at the time of the marriage. There is nothing in the record to show that appellant has not received in value an amount fully equalling one-third of appellee's personal property, which is all she is entitled to under the statute. We cannot say that the findings of the trial

court that appellee is entitled to this furniture is contrary to the preponderance of the evidence.

The trial court awarded $40 per month for the support and maintenance of the two minor children, but provided in the decree that such award should not commence to accrue until appellant had surrendered possession of the homestead and the Radio Hill property.

Whether the award of the Radio Hill property to appellant requires or justifies a reduction of this monthly allowance is a matter which should be first determined by the trial court. Since such court has continuing control of allowances of this character, we leave the determination of that question to it.

The decree is reversed, and the cause is remanded with directions to the chancery court to enter a decree awarding relief to, and fixing liability of, the parties, in the same manner and to the same extent as the same was fixed and declared in the decree appealed from, except that:

1. In lieu of provisions contained in the original decree, awarding title to and possession of the Radio Hill property to plaintiff, such new decree shall deny plaintiff's prayer for cancellation of deeds conveying such property to defendant, and shall award title and right of possession thereof to defendant free from any claim of plaintiff; and

2. In lieu of the provisions contained in the original decree requiring plaintiff to contribute $40 per month for the support of the minor children, and fixing the time when, and conditions on which such installments should begin to accrue, the trial court is directed to now determine and show in said decree the amount which plaintiff shall be required to contribute monthly towards the support of such children, and fix the time when such allowances shall begin to accrue, and provide the dates for and manner of payment thereof.