Mildred S. McCRAY *v.* Elwood H. McCRAY, Jr.

74-69

Substituted Opinion delivered October 7, 1974

*Ralph R. Wilson,* for appellant.

*William C. Gilliam,* for appellee.

CONLEY BYRD, Justice. Both appellant and appellee sought a divorce. The appellant prevailed. However, she contends that the chancellor erred with respect to her statutory dower rights. Appellant asserts that she is entitled to a dower interest in a parcel of real property in addition to ½ of the proceeds from the sale of their jointly owned residence. The appellee admitted that he owned an undivided 1/3 interest in certain realty. Ark. Stat. Ann. § 34-1214 (Repl. 1962) provides in pertinent part that where the wife is granted a divorce, as here, she "***shall be entitled to one-third [1/3] of the husband's personal property absolutely, and one-third [1/3] of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage for her

life*** " Clearly this statute mandates that appellant was entitled to her statutory interest in this additional real property.

Appellant also presents the argument that even though the court awarded her the household furnishings, ½ of the proceeds from the sale of the residence and an automobile, she was entitled to a dower interest in additional personal property. The burden was upon her to establish the nature and extent of appellee's property, both real and personal. It was for the chancellor to resolve the conflict in the evidence, some of which appears speculative. After a careful review of the evidence, we are of the view there is nothing in the record to show that appellant has not received in value her equitable share of her statutory rights in the personal property. *Biddle* v. *Biddle*, 206 Ark. 623, 177 S.W. 2d 32 (1944); and *Myers* v. *Myers*, 226 Ark. 632, 294 S.W. 2d 67 (1956).

The chancellor dissolved the estate of the entirety under which the parties' homestead was held and ordered the property sold and the proceeds divided. The record shows that the parties were married in 1928 and that at the time of trial in January, 1971, appellant was sixty-four years of age. Appellant had been steadily employed during most of the marriage — having earnings of $7,800 for the year of 1970. Appellee had worked as a rural mail carrier since 1935, and his earnings fluctuated from $10,000 to $12,000 per year. Some two years before their separation the parties had sold the home they owned on Main Street in Malvern for $12,000 and after paying off a small mortgage put the balance of $11,-000 into their present home. The proof shows that their present home was built on a lot acquired in 1959, for $3,000, by appellant from her own monies. In addition appellant admittedly put an additional $6,900 of her own savings into the construction cost of their present home. Other evidence shows that appellee left the appellant and took a room with a widow and her children two doors down from appellant. When we consider that these parties had been married for thirty-nine years; that appellee flagrantly violated the marital code by moving in with another woman within sight of the family home; and that appellant not only spent $3,000 of her own funds for the lot upon which the house was constructed but also used $6,900 of her savings to finish the construction only two years before the separation, we conclude that the

chancellor abused his discretion in ordering the family homestead sold. It follows that the chancellor should have awarded possession of the family homestead to appellant and have imposed upon her the obligation of keeping up the insurance and taxes in the parties' joint names.

Appellant also requests an additional attorney's fee for the services of her counsel on appeal, which we allow in the amount of $600.00.

Reversed and remanded.

JOHN A. FOGLEMAN, Justice, dissenting. Like my brother Holt, I am unwilling to join in the court's retreat from its previous refusal to hold that the chancellor abused his discretion in ordering the tenancy by the entirety disolved by sale. In our original opinion in this case, we said:

> Neither can we agree that the chancellor erred in ordering the jointly owned residence sold and the proceeds equally divided between the parties. Each is regularly employed. The appellant earns approximately $7,800 a year. Appellee's earnings fluctuate from $10,000 to $12,000 annually. The chancellor awarded her $50 per month alimony and, as indicated, the household furnishings. Appellant has had the use of the residence since their separation in 1967. Their only child is a married adult. Ark. Stat. Ann. § 34-1215 (Repl. 1962) specifically gives the court the power to dissolve an estate by the entirety upon the rendition of a final divorce decree. Sec. 34-1214, supra, provides authority for the sale of real estate where it cannot be divided without "great prejudice" to the parties. The chancellor is, therefore, accorded broad discretionary authority in the disposition and award of marital property in a divorce action. In view of both parties' earnings and their contribution to the purchase of the home in which they had lived for only approximately two years before their separation, the award of the household furnishings to appellant together with alimony, we cannot say the chancellor abused the discretionary power entrusted to him by our legislature in ordering a sale of the property and dividing the proceeds equally. Furthermore, it is

well established that we do not reverse a chancellor's finding on a disputed factual issue unless it is clearly against the preponderance of the evidence. We are unable to say that the chancellor's resolution of this issue was clearly against the preponderance of the evidence.

This case had been before that judge from the time appellant instituted suit for separate maintenance on January 31, 1967. She did not even seek a divorce until October 17, 1969, some two years after appellee took up his abode in a place near this home. Even then, her grounds were general indignities and desertion. The case was tried January 19, 1971. The chancellor saw, heard and evaluated these parties and their positions. For some unexplained reason a formal decree was not entered until two years and nine months after the court's decision was noted on the trial docket on the day of the trial.

During the separation of the parties beginning in January, 1967, he bought a set of tires for appellant's automobile. In addition to other items of personalty awarded her, appellant sold a boat for $150.00 with appellee's consent.

Appellant was approximately 67 years of age at the time the decree was entered. At the time of the trial, she had been employed as a secretary, clerk-typist, by the U.S. Department of Agriculture for 21 years, had a salary of $7,800.00 a year, was eligible for retirement and will be required to retire when she reaches age 70. Her retirement income would have amounted to $150.00 or $160.00 a month, if she had retired at the time of the trial. She has a diamond ring worth $1,000.00. Although she kept her money separate all during the marriage, with approval of appellee, she admitted that her money was released because appellee was paying things she normally would have paid as "a member of the marriage." Appellee, a rural mail carrier, earned $12,610.70 in 1970, the most he ever earned, but his earnings, being based on a mail count, fluctuate and decreased by $1,100.00 in 1971. He anticipated that it would later be much less. He testified that appellant had tried to get him fired.

The lot on which the home was built in 1964 was purchased by appellant in 1959 for $3,000.00. Of the cost of

the new home $11,000.00 was paid from the proceeds of the sale of the home in which the parties had been living. Appellant's contribution of $6,900.00 to the cost of the home was based upon her promise to appellee to pay all above the $11,000.00 realized from the sale, because of his reluctance to incur indebtedness for a new home. Appellee testified that he let appellant pressure him into selling and that the sale price was far below value. He said the buyer made $7,000.00 profit on it. Appellee's father gave them $350.00 on a lot for the previous home.

All these matters and others were in contemplation by the chancellor in arriving at his decision. In spite of the fact that fault is a relevant consideration in such matters, giving the chancery court discretionary power to act upon tenancies by the entirety in divorce cases was not for punitive purposes. The discretion is a sound judicial one and this, to me, means an equitable one. Appellant was not blameless. Without detailing the evidence the chancellor heard, the fact that appellee was not without fault, is clearly shown by the testimony of the mature adult daughter of the parties, called as a witness by appellant. She said that her mother and father had trouble for many years—at least since her childhood. Appellant admitted she threw a rock at appellee when he came to the house during the separation.

I simply cannot agree that the chancellor abused his broad discretion in this matter.

FRANK HOLT, Justice, dissenting. I dissent only from that part of the majority opinion which holds that the chancellor erred in dissolving the parties' jointly owned residence, ordering the property sold and the proceeds divided between them. As indicated, both parties were steadily employed during most of their marriage. It is uncontradicted that the appellant "kept my money separate" which she earned during their marriage. From these funds she contributed to the purchase of their new home in order that the full purchase price be paid. However, before their present separation, it appears that during their marriage the appellee paid the utilities and provided her money every two weeks "to run the house on". For twenty years he had made the monthly payments on the house which she persuaded him to sell in order to build their

home which is now in issue. Since this acquisition and during this litigation, appellee has continued to pay the insurance, taxes and all utilities except the telephone bill. Her earnings, as well as appellee's, have regularly improved. She has $3,800 savings in California and $590 in a local state depository. The chancellor awarded her all of the household furnishings, an automobile, attorney's fee and $50 a month alimony. Appellant has had the use of their jointly owned residence since their separation in 1967. Their only child is a married adult who testified that her parents' marriage was a "mismatch." Appellant and appellee each adduced evidence of marital discord tending to blame or place the fault upon the other.

It is well settled that the chancellor is accorded broad discretionary authority in the award of property in a divorce action. The appellant has the burden to demonstrate that the chancellor abused his discretionary power in ordering a sale of their jointly owned property and dividing the proceeds. Furthermore, it is well established that we do not reverse a chancellor's finding on a disputed factual issue unless it is clearly against the preponderance of the evidence. The chancellor is in a better position than are we to observe the witnesses and evaluate the conflict in equities.

I would affirm the chancellor on this issue.

FOGLEMAN, J., joins in this dissent.