ELLISON v. HEWITT.

1. TAXATION—TAX SALE—POSSESSION BY LAND CONTRACT PURCHASERS.

Upon acquisition by the State of absolute title to premises through nonpayment of taxes, occupants who were land-contract purchasers thereof from former owner and who remained in possession continued thereon merely by sufferance of the State and did not then hold under their vendor.

2. VENDOR AND PURCHASER—EQUITY—PAYMENT OF TAXES—SCAVENGER SALE.

Land contract vendor who recited in contract that taxes for year prior to date of contract had been paid, whereas they had not been, may not have equitable relief against vendees under such contract who purchased the property at so-called scavenger sale from State which had acquired absolute title through nonpayment of such taxes, where it appears no confidential relation existed between the parties and vendees had never had an obligation to pay the taxes for the nonpayment of which the property had been sold.

3. TAXATION—DEBT DUE FROM PROPERTY OWNER—SEIZURE OF PER-
SONALTY.

> A tax assessment against a property owner is a debt due from
> him to the tax-assessing authority and the property owner's
> personal property is subject to seizure and sale for the
> amount of the tax (1 Comp. Laws 1929, § 3429, as amended
> by Act No. 38, Pub. Acts 1934 [1st Ex. Sess.]).

4. SAME—DEFAULT IN PAYMENT—PURCHASE AT TAX SALE.

> While a purchaser under a land contract may not build up a
> tax title by reason of his own neglect of duty, where he is
> not obligated to pay the tax for which the land is sold, and
> their nonpayment is not due to his default, he is as free to
> become a purchaser at a tax sale as any other person.

5. VENDOR AND PURCHASER—TAXATION—RECITALS IN CONTRACT—
SCRIVENER.

> Vendor under land contract which recited that previous year's
> taxes had been paid, contrary to fact, may not be heard to
> say she should not be bound by the terms thereof in suit
> against vendees because she relied upon the skill of the scrive-
> ner by whom it was prepared.

6. TAXATION—STATUTES.

> Statutory provisions as to taxation cannot in justice be enforced
> against one individual and relaxed to the extent that they
> are wholly inoperative as against another individual.

Appeal from Calhoun; Hatch (Blaine W.), J.
Submitted April 14, 1943. (Docket No. 89, Calen-
dar No. 42,181.) Decided May 18, 1943.

Bill by Elsie Ellison against Amos T. Hewitt and
wife for specific performance of a land contract and
for other relief. Decree for plaintiff. Defendants
appeal. Reversed.

*Charles H. Burnham,* for plaintiff.

*Cobb & Nielsen,* for defendants.

NORTH, J. This is a suit for specific performance of a land contract and incidental injunctive relief. Plaintiff, who was the vendor, was decreed relief against defendant vendees; and they have appealed.

On September 15, 1937, plaintiff sold on land contract to defendants certain lands of which she was the fee owner in Calhoun county. The contract price was $1,400, with a down payment of $20, and monthly payments of $20 until February 15, 1938, and $12 per month thereafter until payment was made in full. Upon receipt of the purchase price plaintiff was to convey the premises to defendants free of all incumbrances, except such as accrued through default of the vendees, and some other provisions not pertinent to this suit. Defendants have been in possession since the inception of the contract. As to payment of taxes the contract provided:

"First party (plaintiff herein) represents that all taxes and assessments heretofore levied upon said premises to and including the 1936 State and county taxes have been paid, and second party. agrees to pay, when due, all other taxes and assessments of every nature which are now levied thereon, if any, and all which shall become a lien upon said premises hereafter during the term of this contract."

Notwithstanding the above-quoted provision in the contract of September, 1937, the 1936 taxes on the property were not paid; and because of this nonpayment the property was later sold at the auditor general's tax sale of delinquent properties, and in consequence of such sale title in fee thereafter vested in the State of Michigan. At the so-called scavenger sale which followed, the defendants herein

purchased the property; and no attempt was made during the statutory period to match their bid. There is no claim of irregularity in any of the tax proceedings, nor is there any proof of fraud or deception on the part of defendants. It should also be noted that plaintiff offers to reimburse defendants for the money they expended in securing title from the State. Such reimbursement has been declined by defendants, who claim to have acquired absolute title by their purchase at the scavenger sale. The trial judge stated the issue for determination as follows:

"Can one who is in possession of land as a contract vendee purchase an outstanding adverse tax title and assert the same against his contract vendor, where the sale of the real estate for taxes was not brought about by the default or failure of the contract vendee in the performance of his contract duties relative to the payment of taxes, but was due to the default or failure of the contract vendor to pay taxes assessed against said real estate prior to the sale thereof to defendants on land contract?"

Seemingly, on the theory that there was a confidential relation existing between plaintiff vendor and defendant vendees, the circuit judge reached the conclusion and recited in his decree that "said purchase of said above-described real estate by said defendants inures to the benefit of their contract vendor, Elsie Ellison, plaintiff herein; and that defendants held the title to said real estate and property in trust for the said Elsie Ellison, plaintiff herein."

Under the facts presented by this record we think the above conclusion cannot be sustained, and that the decree entered must be vacated.

No case is cited in support of plaintiff's conten-

tion which in some of its essential factual respects does not differ from the instant case. At the inception of this transaction there was no semblance of a confidential relation between the parties. They were dealing at arm's length as vendor and vendees. They entered into a plain and definite contract in which plaintiff stated the taxes on the land "to and including the 1936 State and county taxes" had been paid. They had not been paid, nor were they thereafter paid by plaintiff or any other person. Instead it was the default in the 1936 taxes which led to the tax sale through which the State became the absolute owner of the property to the exclusion of both plaintiff and defendants. Thereafter, over a period of months defendants continued in possession merely by sufferance of the State as owner. They were not then holding under plaintiff. This was true when defendants bid at the scavenger sale and later when they received their deed from the State. It is of controlling importance that the taxes of 1936 for which plaintiff's property was sold were not only taxes which defendants were never under obligation to plaintiff or the State to pay, but on the contrary they were taxes that plaintiff expressly recited in her land contract with defendants had been paid. Plaintiff's breach of this contract obligation can hardly be made the basis of now granting her equitable relief.

Plaintiff relies much on *Curran* v. *Banks,* 123 Mich. 594, but in that case the vendor made no representation that all taxes prior to the contract had been paid, and in the particulars above noted there clearly is a distinguishing difference between the facts of the cited case and those of the instant case. The same may be noted as to our recent decision

in *Gulf Refining Co.* v. *Perry,* 303 Mich. 487, where we said:

"The tax assessment against defendants Perry was a debt due from them to the city of Lansing.* Perry's personal property was subject to seizure and sale for the amount of the tax. 1 Comp. Laws 1929, § 3438 (Stat. Ann. § 7.91). Under the circumstances of this case, defendants Perry should not be permitted to profit by their own wrong."

There is also a controlling factual difference between the instant case and *Jacobsen* v. *Nieboer,* 299 Mich. 116, wherein defendants sought to defeat plaintiff's right to foreclose a mortgage by asserting an alleged superior title to the mortgaged property, which title defendants had obtained in consequence of their own default in paying taxes which they had covenanted with plaintiff they would pay.

The opinion of Mr. Justice Cooley in *Blackwood* v. *Van Vleit,* 30 Mich. 118, is much in point with the fundamental phase of the instant case, and we quote briefly (p. 121):

"We have looked into the cases relied upon in the opinion (*Lacey* v. *Davis,* 4 Mich. 140 [66 Am. Dec. 524]), and find that in all of them the party who was held precluded from acquiring a title at a tax sale, was either in possession of the land when the tax was assessed, and upon that ground chargeable with its payment (citing cases); or by contract or otherwise it had become his duty to other parties concerned to make payment: *Chambers* v. *Wilson,* 2 Watts (Pa.), 495. * * * And in *Blakeley* v. *Bestor,* 13 Ill. 708, which was cited and relied upon in the same case, it was held that the possession of a party at the time the tax was assessed did not

---

* See 1 Comp. Laws 1929, § 3429, as amended by Act No. 38, Pub. Acts 1934 (1st Ex. Sess.) (Comp. Laws Supp. 1940, § 3429, Stat. Ann. § 7.81).—Reporter.

necessarily preclude him from buying the land at a sale to satisfy such tax, but that it was open to him to show by evidence that he occupied by such contract or under such circumstances as made it the duty of some other party to pay it. In other words, the doctrine of that case is, that while a party is not to build up a title on his own neglect of duty, yet, if he can show he owes no duty in the premises, he is as free to become purchaser at a tax sale as any other person."

Plaintiff finds herself in a regrettable position solely by reason of her own default, and she cannot be heard to say that she should not be bound by the terms of her land contract because she relied upon the skill of the scrivener by whom it was prepared. It seems pertinent to repeat our observation in a recent case of somewhat like character:

"Admittedly the result in the instant case is unfortunate and harsh; but that circumstance cannot be made a ground for nullifying the effectiveness of statutory provisions enacted for the purpose of enabling governmental agencies to levy and collect taxes without which the affairs of the State cannot be carried on. The statutory provisions cannot in justice be enforced against one individual in the matter of taxation and relaxed to the extent that they are wholly inoperative as against another individual." *Pavlovic* v. *Kastner,* 302 Mich. 120.

The instant case is not one wherein defendants obtained an outstanding title which was adverse to plaintiff's title. Instead they in effect obtained plaintiff's own title to or ownership of the land from the State to which by force of law plaintiff's title had passed in fee. Since plaintiff's loss of title was in no way due to defendants' default, they were free to purchase from the State which took its title direct

from plaintiff solely in consequence of her own de-
fault.

The decree of the circuit court will be vacated,
and one entered in this Court dismissing plaintiff's
bill of complaint. Defendants will have costs of
both courts.

BOYLES, C. J., and CHANDLER, STARR, WIEST, BUT-
ZEL, BUSHNELL, and SHARPE, JJ., concurred.