## WALKER v. WOODS.

1. TAXATION—CONTRACTS—DEFAULT—EQUITY.
   One who is obligated by contract with another to pay taxes on realty may not, through his own default, obtain an advantage over the other.

2. EXECUTION—SETTING ASIDE SALE—VENDOR AND PURCHASER—REIMBURSEMENT—EQUITY.
   Purchaser of city lot under land contract, who therein agreed to pay back taxes and failed to pay all of them and also failed to pay or make tender of balance due under contract and who later purchased the lot at so-called scavenger sale after State had acquired title was not entitled to set aside levy and execution sale had in vendor's suit to establish lien for balance due under contract and remainder of back taxes paid by him in view of purchaser's persistent failure to do or offer to do equity.

3. HOMESTEAD—VENDOR AND PURCHASER—HUSBAND AND WIFE.
   The wife of a vendee may not interpose her homestead right under a land contract as against the vendor or his grantee.

Appeal from Wayne; Verdier (Leonard D.), J. Submitted January 6, 1944. (Docket No. 44, Calendar No. 42,506.) Decided February 24, 1944.

Bill by Andrew Walker and wife against Alexander B. Woods and another to set aside a levy and sale on execution. Decree for defendants. Plaintiffs appeal. Affirmed.

*Ramon A. Martinez,* for plaintiff. .

*Maxton R. Valois (Dale D. Libkuman,* of counsel), for defendant.

BOYLES, J.   This is a case in the equity side of the court, to set aside a levy and execution sale of a certain parcel of real estate in the city of Ecorse, Wayne county, and to enforce plaintiffs' claim of a homestead right therein. The case was heard by the circuit judge on oral statements of counsel without testimony, and the court dismissed the bill of complaint. Plaintiffs appeal and the case is submitted here on stipulated facts, under Court Rule No. 66, § 10 (1933).

On March 22, 1939, plaintiff Andrew Walker signed an offer and agreement to purchase the land in question which was accepted by the then owner, as follows:

"PRELIMINARY AGREEMENT

"Detroit, Mich., March 22, 1939, I hereby offer and agree to purchase through Andrew J. Manion, agent for the owner, the following described property, situated in the village of Ecorse, in the county of Wayne and State of Michigan, lot 203, Central Park subdivision, and to pay therefor the sum of $125, upon the following terms and conditions: $10 upon the signing of this agreement, receipt of which is hereby acknowledged to apply on the purchase price, the same to be returned should proposition be rejected by owner, or prior sale, of said property; or should the title be found unmarketable; the bal-

ance to be paid as follows: $5 or more each month upon execution of good and sufficient (land contract), the balance to be paid ....................
Purchaser to pay all back taxes ..................
    "Said payments (to include) (not to include) ...... % interest. Deal to be closed within ...... days from date, ....... Rents, taxes, other bills and insurance to be adjusted to date of transfer.
                    "Purchaser—ANDREW WALKER
                        "Address—5336 Ripolle St.
    "I hereby accept the above offer and agree to terms of same, and will furnish a quitclaim deed for lot No. 203 when full amount is paid.
                        "Owner—HUGH CONNOLLY."

The present controversy is occasioned by Andrew Walker's failure to pay the back taxes which he, as purchaser, had agreed to pay, according to the above preliminary agreement. At that time there were unpaid State and county taxes against the said lot for the years 1933, 1934 and 1935 in the amount of $64.11. There were also township and village taxes unpaid for the years 1931, 1932, 1936, 1937, 1938 and 1939 amounting to $65.15. Walker paid Connolly an additional $30 on the purchase price, but did not pay any back taxes. Walker and his wife entered into possession and erected a cement block structure which they used and were still using as their home at the time Connolly filed the suit in chancery referred to later.

On November 3, 1939, as a result of the nonpayment of the taxes for the years 1933, 1934 and 1935, the property passed to the State of Michigan and was deeded to the State of Michigan by the auditor general on November 29, 1939. At a scavenger tax sale in May, 1940, Andrew Walker bought the property from the State of Michigan, paying therefor the sum of $64.11 tax arrearage, obtained a deed to the said lot from the State of Michigan, and re-

fused to pay Connolly any more money, disavowing the agreement with Connolly, claiming that inasmuch as he had obtained a deed from the State of Michigan, Connolly had nothing more to do with the property; that he, Walker, was the owner with full title.

On May 28, 1941, Connolly filed a suit in the circuit court for Wayne county in chancery, referred to in the stipulated facts as chancery No. 313,216, and obtained a default decree against Andrew Walker. Mrs. Walker was not made a party. The purport of this case is not explained in the stipulation of facts, but it refers us to the court's opinion in the instant case for further facts and we quote from the opinion as follows:

"July 3, 1940, Connolly paid the other unpaid taxes amounting to $65.15 to save the property and on May 28, 1941, filed a bill of complaint (No. 313,216 in chancery) against Walker, to establish a lien against the premises for the unpaid portion of the purchase price and for that part of the taxes paid. All of the proceedings in this case were regular and on December 16, 1941, a decree was entered establishing Connolly's right to a vendor's lien for the unpaid portion of the purchase price and for the taxes which Walker failed to pay, amounting with interest to $172.65 and costs. The decree provided that Walker pay the amount within 15 days, in which case Connolly should quitclaim to him, otherwise that the property be sold to satisfy the claim under the same procedure as in chancery foreclosure of mortgages. A copy of this decree was served on Walker.   *   *   *

"All of the proceedings to sell the premises under the decree of December 16, 1941, were regular and the sale of which Walker had notice was held on March 13, 1942. Connolly bid in the property, obtained a deed to it in regular course, and an order confirming the sale was made and entered March 18,

1942, a copy of which was also personally served on Walker.''

Connolly later conveyed his title and interest in the premises to defendant Woods. Woods started proceedings before a justice of the peace, acting as circuit court commissioner, to oust Walker from possession of the premises, obtained judgment for restitution, and on October 14, 1942, writ of restitution was issued and placed in the hands of one Hockett, a township constable (defendant herein) for service. Thereupon plaintiff Andrew Walker started the present suit in chancery to set aside the decree entered against him in chancery case No. 313,216, and to enjoin defendant Woods and the constable from taking any action on the writ of restitution. Later, plaintiff Marie Walker was allowed to join as party plaintiff on the claim that she had a home, stead right in the land in question.

While plaintiffs seek the aid of a court of equity, we are unable to find from the record any substantial indication that plaintiffs have at any time offered to do equity during the entire course of this rather complicated situation. Assuming that plaintiffs rely on the original preliminary agreement as ground for equitable relief, in it Andrew Walker promised to pay the back taxes but later refused, as well as failed, to do so. As a result of his refusal or failure to pay the back taxes, the State became the absolute owner of the land. Walker purchased it from the State at scavenger sale, thereby attempting to cut off the former owner's rights by taking advantage of his own default in his agreement to pay the taxes. As between Walker and Connolly (the former owner), it is obvious that Walker cannot now obtain any advantage in a court of equity based on the deed Walker received from the State

at the scavenger sale. In equity, any interest Walker acquired inures to the benefit of Connolly.

"The rule is that one who is obligated by contract with another to pay the taxes may not, through his own default, obtain an advantage over the other." *Ford Heights Land Co.* v. *Schanert,* 279 Mich. 693.

See, also, *Jacobsen* v. *Nieboer,* 299 Mich. 116; *Ellison* v. *Hewitt,* 305 Mich. 349.

Besides his failure to pay the back taxes, Walker also defaulted in paying Connolly the balance of the purchase price. Nor do we find any indication that Walker has at any time offered to do equity, by paying Connolly the balance of the purchase price. Because of Walker's default in such payment, Connolly established his lien for the unpaid portion of the purchase price· as well as for the back taxes paid by him, in a court in chancery. The decree of sale of the property for this unpaid balance as well as for the back taxes which Connolly paid now stands against Walker's right to any relief in the case at bar. He has now had two opportunities to do equity and failed in both cases.

Plaintiffs—particularly Marie Walker—seek relief on the ground that the land constitutes a homestead, basing this claim on *McKee* v. *Wilcox,* 11 Mich. 358 (83 Am. Dec. 743), which holds that "a homestead may be claimed in land of which a party is in possession under a contract to purchase." But the *McKee Case* is based on the reasoning that "the wife of a husband who refuses or neglects to perform his contract, should be permitted to do it for him to save her interest in the homestead; as she may redeem a mortgage to save her right of dower in an equity of redemption." Marie Walker is as much without equity as her husband, in the instant

case. In *Fournier* v. *Chisholm*, 45 Mich. 417, the wife sought the intervention of a court of equity to protect alleged homestead rights in premises occupied by her husband and herself as a homestead. The building on the premises was mortgaged for moneys advanced by a defendant to enable the homestead claimants to build the house claimed by them as a homestead. The court held (syllabus):

"A wife has no equity to interpose her homestead right against a chattel mortgage which she has not signed, where it is given for moneys advanced for the purpose of establishing the homestead."

We adhere to the rule stated in 26 Am. Jur. § 58, p. 37, as follows:

"The decisions hold that *except as against the right of the vendor*, one in possession of land under a contract of purchase may assert the homestead right."

If the rule were otherwise, a man could buy a home on contract and, no matter how little he had paid toward the purchase price, defy his vendor to collect any more, on the theory that the law made his home exempt against any process to collect.

This is not a case where the husband has attempted to *alienate* a homestead right without the signature or consent of his wife, and plaintiffs' authorities on that question are not in point. Nor are we impressed with plaintiffs' claim that defendant Woods now possesses any less rights than those which might be asserted by Connolly. By proper conveyance Woods succeeded to Connolly's rights in the premises.

Decree affirmed, with costs.

North, C. J., and Starr, Wiest, Butzel, Bushnell, Sharpe, and Reid, JJ., concurred.