Otto ENGEN, Plaintiff, Appellant and Cross Respondent,

v.

Millard KINCANNON, Mountrail County, a Municipal Corporation, Theadore L. Kincannon, L. R. Baird, as Receiver of the Citizens State Bank of Tagus, North Dakota, F. L. Stangl, Hannah L. Cline, L. M. Rutten, Frank J. Bach, as representative of the Estate of Hannah L. Cline, Deceased, and Executor of the Estate of Hannah L. Cline, Deceased, Anna L. Kincannon, C. M. Tollefson, George I. Rolf, Julia Tollefson, Jacob Weber, August P. Nelson, Clarkfield State Bank, Clarkfield, Minnesota, a foreign corporation, Olof P. Nelson, Nellie F. Church, Andrew E. Nelson, J. Charlson, Clara Olson, Perry Bailey, Richards Trust Company, a foreign corporation, Tobias Bailey, Carl O. Moen, W. F. Moore, Lydia Moen, Mrs. Mary Dixon, Ernest Kath, H. E. Strubeck, Nellie Quill, Drake-Ballard Company, a foreign corporation, Isadore F. A. Glubka, Mrs. Anna R. Glubka, G. W. Higgins, Mary Anna Higgins, Ben Bronson, Annie L. Wilson, A. N. Rogers, Benjamin E. Sauter, Northwestern National Bank and Trust Company, a foreign corporation, successor to Minnesota Loan & Trust Company as Trustee under the Will of Minnie F. Chapin, Deceased, M. C. Egan, Hugh Egan, Ella J. Halvorson, Effie A. Halvorson, Olga H. King, Cora E. Striegel, J. E. Vanstrom, The Bankers Farm Mortgage Company, a foreign corporation, Alf O. Nelson, E. E. Peterson, Montana-Dakota Power Company, a corporation, Edwin L. Lorentson, Rose L. Brugman, Piper Howe Lumber Company, a corporation, Nelse G. Nelson, Ernst Reiff, C. W. Chapman, Union Investment Company, a foreign corporation, Mary Brugman, Margaret Doran, John C. Barry, Isabella Barry, Ida S. Barry, Simon W. Barry and all other persons unknown, claiming any estate or interest in or lien or incumbrance upon the property described in the complaint, Defendants,

and

Alta Cochrane, as administratrix of the Estate of Lucy Ann Kincannon, also known as Anna L. Kincannon, and as sole heir at law of Lucy Ann Kincannon, also known

as Anna L. Kincannon, Defendant, Respondent and Cross Appellant.

No. 7590.

Supreme Court of North Dakota.

Oct. 26, 1956.

[black redaction blocks covering left column and portions of page]

Joseph J. Funke, Minot, for plaintiff and appellant.

Halvor L. Halvorson, Jr., and Jonathan C. Eaton, Jr., Minot, and Thorwald Hansen, Duluth, Minn., for defendant and respondent Alta Cochrane.

MORRIS, Judge.

We rendered a decision affirming that of the trial court. Both the appellant and respondent filed petitions for a rehearing which was ordered. This opinion is written upon reargument and a reconsideration of the entire case.

On December 15, 1943, Otto Engen secured a judgment quieting title in him to a large number of tracts of land in Mountrail County including the Northeast Quarter and the Southwest Quarter of Section 17, Township 155, Range 88. Among the defendants named were Millard Kincannon, Theadore L. Kincannon, and Anna L. Kincannon.

On November 14, 1922, Anna L. Kincannon, now deceased, was the owner of the two quarter sections above described. She died on March 8, 1925, a resident of Duluth, Minnesota. Letters of administration of her estate were issued to Alta Cochrane, her daughter and sole surviving heir, in Minnesota on July 26, 1926, and letters of administration were issued to Alta Cochrane by the County Court of Mountrail County, North Dakota, on September 8, 1928. On November 8, 1928, an appointment of T. L. Kincannon as resident agent of Alta Cochrane, administratrix of the estate of the deceased, was filed in the County Court of Mountrail County. He died in 1942. The defendant Millard Kincannon is a son of T. L. Kincannon who was a brother of the deceased. Thus Millard Kincannon is a nephew of the

deceased and a cousin of the defendant Alta Cochrane. The plaintiff, Otto Engen, is a brother-in-law of Millard Kincannon.

On November 14, 1922, Anna L. Kincannon entered into a contract with Millard Kincannon for the sale to him of the land involved in this controversy. It was recorded in the office of the register of deeds on December 9, 1922. The purchase price was $6,500, due on or before June 1, 1929, without interest. It was payable at the residence of the vendor, 6009 Tioga Street, Duluth, Minnesota. The contract contained a reservation to Anna L. Kincannon and her heirs of a one-half interest of all mineral rights. Millard Kincannon went into possession and still remains in possession of the land. He lived on an adjoining tract. The contract required him to pay all taxes and assessments legally levied against the land subsequent to the year 1921. He paid $500 on the contract and taxes up to and including those assessed for 1928. He did not pay the taxes for the year 1929 or any taxes assessed thereafter. He made no payment on the purchase price after March 11, 1927.

On December 9, 1930, the land was sold at tax sale to Mountrail County for delinquent taxes levied against it for 1929. Thereafter the taxes were bid in by the county for subsequent years up to and including 1935. On May 8, 1940, the county auditor of Mountrail County issued a notice of expiration of the period of redemption addressed to Anna L. Kincannon, Blaisdell, North Dakota, covering the taxes from 1929 to 1935 inclusive in the total amount of $296.64. No redemption was made and on October 1, 1940, a tax deed was issued to Mountrail County. It is agreed that this tax deed was void and conveyed no title to the county because of the failure of the county auditor to make valid service of the notice of expiration of redemption.

On March 3, 1941, Kincannon leased the land from Mountrail County. On March 10, 1941, Mountrail County sold the two quarter sections to the plaintiff, Otto Engen,

by separate contracts for deed. The purchase price of the Northeast Quarter of Section 17 was $600 and of the Southwest Quarter of Section 17 was $418.14. The contracts were fully paid by Engen and a tax deed issued to him by Mountrail County on June 3, 1943. On December 15, 1943, judgment was entered quieting title in the plaintiff to the Kincannon land by default.

On May 12, 1951, the plaintiff entered into an oil and gas lease with the Stanolind Oil and Gas Company covering 116 descriptions of land in Ward, Mountrail, and McLean Counties. This lease included the Kincannon land upon which the plaintiff collected $1,920 in bonus payments and rentals.

On January 16, 1952, attorneys for the estate of Anna L. Kincannon, also known as Lucy Ann Kincannon, and Alta Cochrane made a motion in the District Court of Mountrail County

"for an Order vacating the Judgment herein as to said Anna L. Kincannon, also known as Lucy Ann Kincannon, and for such further relief as to the Court may seem just."

On the hearing on this motion it appeared that no process had ever been served upon the administratrix of the estate of Anna L. Kincannon, deceased. In an affidavit in support of her motion Alta Cochrane charged that Otto Engen held the land under an agreement with the defendant Millard Kincannon; that title would be conveyed to Millard; and that the true title did not belong to Engen although the legal title was in his name. In a counter affidavit Engen stated:

"That affiant purchased said premises as herein outlined in good faith and holds the same in good faith and neither at the time of the purchase nor at any time since has affiant ever promised to reconvey said premises to Millard Kincannon, although he has permitted Millard Kincannon to farm the same and to retain the increment

and profit from said premises; that no collusion in the purchase of said property between affiant and Millard Kincannon has ever been effected or made."

After the hearing on the motion the court in a memorandum opinion directed the attorneys for Alta Cochrane to

"draw an order for the Court to sign for the reopening of the judgment in the above entitled action in so far as it applies to Alta Cochrane and the land above described. Alta Cochrane will then be given thirty days in which to file her answer."

On February 28, 1952, the court signed the following order:

"It is hereby ordered in accordance with said Memorandum of Opinion that the above judgment herein be reopened in so far as the same pertains to the defendant Anna L. Kincannon, also known as Lucy Ann Kincannon, and the NE¼ and the SW¼ Section 17, Township 155, Range 88, and that said defendant, Anna L. Kincannon, also known as Lucy Ann Kincannon, by and through her administratrix, Alta Cochrane be allowed 30 days from the date hereof, within which to interpose an answer to said action."

Pursuant to the permission given in the order opening up the judgment Alta Cochrane as sole heir at law of Anna L. Kincannon, also known as Lucy Ann Kincannon, deceased, and as administratrix of the estate of the deceased, served and filed an answer and counterclaim. The answer denies plaintiff's ownership of the land and alleges that the tax title under which he claims is wholly void. In her counterclaim Alta Cochrane alleges that the plaintiff secured title to the land through a fraudulent scheme entered into between the plaintiff and Millard Kincannon by which Millard Kincannon permitted the land to be forfeited to Mountrail County for nonpayment of taxes and by secret arrangement

the plaintiff was permitted to purchase the land from Mountrail County for the use and benefit of the defendant Millard Kincannon whose duty it was under the contract for deed to pay the taxes and that Millard Kincannon fraudulently failed and neglected to inform the defendant Alta Cochrane of the pendency of the action to quiet title and that shortly before she moved to vacate the judgment she learned that Kincannon had elected to abandon his right to purchase the land under the contract. She further alleges:

"That defendant, Millard Kincannon, was personally served in this action, and that this Court duly determined that Millard Kincannon has no right, title or interest in and to the property above described."

Alta Cochrane also alleges upon information and belief that the value of the crops for each of the nine years from and including 1943 until 1951 was $8,534, making a total during that period of $76,806 for which amount the defendant Alta Cochrane claims to have been damaged. She then prays judgment that the court direct conveyance of the land to her free and clear of all claims and liens; that the contract for deed be canceled; and that the court direct an accounting of the rents and income from the land from March 10, 1943, until the entry of judgment herein and that she be awarded judgment against the plaintiff for such sum as shall be found due. The answer was served on plaintiff's attorney March 20, 1952.

The plaintiff replied to the counterclaim admitting the contract for deed between Millard Kincannon and Anna L. Kincannon and reasserted that he is the owner and holder of the land. As a separate defense he alleges:

"That he is the owner and holder of a certain contract for deed made between Millard Kincannon and Anna L. Kincannon on the 14th day of November, 1922, filed for record on the 9th

day of December, 1922, and recorded in the Office of the Register of Deeds in Book 205 of Deeds on page 267, by assignment from Millard Kincannon on April 15, 1952."

He then offers to pay the sum of $6,000 due on the contract.

The judgment was set aside only as to Anna L. Kincannon and Alta Cochrane, as administratrix of the estate. The order setting aside the judgment did not purport to relieve Millard Kincannon of that part of the judgment that found that he and other named defendants

"have no estate, right or interest in and to said premises and they are hereby forever enjoined from further asserting any right, title or interest in and to the said premises or any part thereof."

Neither Kincannon nor Engen made any attempt to be relieved of this part of the judgment. The parties went to trial on the pleadings as heretofore outlined.

Millard Kincannon testified that he never lived on the land but farmed it since he became the purchaser under the contract for deed. He paid no taxes assessed after 1928 although he received tax statements. When tax deed proceedings were instituted by the county he was served with a notice of expiration of the period of redemption but never notified the administratrix of the estate of Anna L. Kincannon that he had received such a notice. He was served with a summons, complaint, and notice of no personal claim as a defendant in this action. He never notified the administratrix of this service. He is married to Otto Engen's sister. He has continued to farm the land after Engen got the tax title from the county. The taxes have always been paid by Engen. Kincannon has not accounted to him for crops raised on the land. He knew that as vendee he could not secure good title of the land through the purchase of a tax title. He did not have Otto Engen buy the land for him because he could not

take tax title himself. He denied that he had an agreement with Engen to buy the land and subsequently to convey title to him. He says:

"* * * we never had any deal of any kind. I farmed the land and figured I would pay him back when I got the money enough to do it.

"Q. You never made any agreement with him to that effect, did you? A. No.

"Q. That's just your thought in the matter? A. Yah.

"Q. You don't know what he thought? A. No.

"Q. As I understand it, Otto Engen pays the taxes on this land for you every year and allows you to keep all the rents and profits from it? A. Yes.

"Q. Did Otto Engen ever tell you that he was merely holding their legal title in his name for your benefit? A. No."

The witness also testified that he never communicated with the administratrix except when he made a payment represented by a receipt dated March 11, 1927. When asked if he felt obligated to pay Engen for the taxes that had been paid by Engen, Kincannon said: "Well, if I was to claim the land back, I suppose I would."

Engen denied that there was any agreement between him and Kincannon to convey the land to the latter or that there was any agreement of that nature. In two instances Engen stated that he held the bare legal title for Kincannon's benefit. He later testified as follows:

"Q. Is it your contention, Mr. Engen, that the crops that were raised from these two quarters were given to Mr. Kincannon as a gift from yourself? A. No, there was nothing said about it. I just figured he owned the land. All I was interested in was just the money that I put in it for him."

After Engen had again testified that he did not consider himself the owner of the land and that he paid the taxes figuring that some day somebody would pay him for them, he was asked:

"Well, did you or did you not expect that that tax money would be repaid to you by Mr. Kincannon?"

To which he replied:

"I expect the tax will be, and I think he would. All I was interested in that land at all was just the money I had in it. I just helped him buy that land back."

This testimony is inconsistent with the allegations of Engen's reply.

The trial court found that the acts and conduct of Millard Kincannon proved his intention to abandon his rights under the contract for deed and to secure and hold the title to the land under tax title adversely to the defendant Alta Cochrane. He also found that Kincannon in utter disregard of his obligations as vendee under the contract for deed to keep the taxes paid as provided in the contract entered into a fraudulent scheme to divest Alta Cochrane of her property and to that end enlisted the aid of the plaintiff Otto Engen and pursuant to that scheme title to the land was taken and continued in the name of the plaintiff and that under secret arrangement with the plaintiff, Millard Kincannon received the crops from the land. The court found that the tax deed proceedings were void and that the deed conveyed no right, title, or interest in the land to the plaintiff Otto Engen and that the plaintiff is entitled to recover money paid by him for tax titles and for taxes but that this is entirely offset by the money received by the plaintiff from an oil and gas lease and he is therefore not entitled to any judgment herein. The court quieted title in Alta Cochrane. During the course of the trial Alta Cochrane attempted to prove the value of proceeds of the crops raised on the land by Millard Kincannon, no part of which was turned over to the plaintiff Engen. The court denied such proof and limited the inquiry to the value of proceeds of the land received by the plaintiff. They were the bonus payments and rentals received under the oil and gas lease. These amounts he offset against the taxes which Engen had paid the county.

The plaintiff appealed from the judgment and demanded a trial de novo. Alta Cochrane has attempted to cross-appeal on the ground that the judgment affords her no relief for the proceeds of the crops raised by Millard Kincannon after June 3, 1943, the date of the tax deed from Mountrail County to Otto Engen. She also contends that she is entitled to a judgment for the bonus payments and rentals received by Engen under the oil and gas lease without offset for the taxes which he has paid to the county.

Alta Cochrane asserts that Engen and Kincannon entered into a fraudulent conspiracy and agreement to secure a tax title to the property which would vest the title in Engen for the benefit of Kincannon which would deprive the vendor of her title. This is a charge of actual fraud which requires stronger proof than is presented by this record. Fraud is never presumed but rather it is the presumption that private transactions have been fair and regular. Strom v. Strom, N.D., 75 N.W.2d 750. Proof of actual fraud must be affirmatively proved by clear and convincing evidence. Reitsch v. McCarty, 35 N.D. 555, 160 N.W. 694. Where circumstantial evidence is relied upon to show fraud it is not sufficient that circumstances will raise a suspicion of fraud. Hoffer v. Crawford, N.D., 65 N. W.2d 625; Steinbach v. Bauclair, 38 N.D. 223, 164 N.W. 672. Engen contends that when he purchased the tax title from the county he thought Kincannon had been the owner of the land, title to which was lost to Mountrail County. He knew that Mountrail County had the land for sale for some

time. When asked whether Kincannon knew that he bought the land at the time he took the deed from the county, Engen said:

"Well, I spoke to him a day or two before, that there was fellows looking at the land and was going to buy it, and I was up to the home place and he told me that he couldn't and didn't have the money to go ahead and settle. So I went up and talked to Glarum and finished it up that way."

It appears to us that although the circumstances are suspicious the proof falls short of establishing a fraudulent conspiracy between Kincannon and Engen. On the other hand, it is clear that Engen's purchase from the county was such that if it had been valid it was in violation of equitable principles and that Engen and Kincannon would not have succeeded in thereby divesting the estate of Anna L. Kincannon of ownership of the land. A title thus secured would have inured to the benefit of the estate of the vendor.

■ The law is well settled that a vendee under a land contract which obligates him to pay the taxes assessed against the land cannot by failing to pay the taxes and allowing the land to be sold at tax sale strengthen his title as against the vendor by acquiring a tax title which is the result of his failure to perform his obligation under the contract. Burke v. Scharf, 19 N.D. 227, 124 N.W. 79; Moss v. Shear, 25 Cal. 38, 85 Am.Dec. 94; McGuigan v. Simpson, 197 Wash. 260, 84 P.2d 1012; Walker v. Woods, 308 Mich. 24, 13 N.W.2d 193. Neither can he acquire for himself a title to or right in the land adverse to his vendor through the purchase of such a tax title for his benefit by a third person. Blackwell v. Kinney, 119 Ark. 578, 180 S.W. 757; Tyler v. Burgeson, 229 Mich. 268, 201 N.W. 185.

■ The record clearly establishes that when the plaintiff took a tax deed to the land from Mountrail County purporting to convey the tax title to him he did so for the benefit of his brother-in-law Millard Kincannon. If the tax title had been good the transaction whether had pursuant to a fraudulent agreement between the plaintiff and Kincannon or not would have been violative of the equitable principles above set forth. Kincannon in his testimony admits that he knew that he could not acquire title in that manner. He should have known that Engen could not acquire title for him.

■■ Failure to assert a valid legal title does not amount to an abandonment and it may be said to be the general rule that the legal title to real estate cannot be lost by abandonment unless there is loss of title through adverse possession or in some other manner recognized by law. Tiffany on Real Property, Third Edition, Section 965; 1 C.J.S., Abandonment, § 5 c. On the other hand an equitable title or an equitable interest in real property may be lost by abandonment. Thompson on Real Property, Permanent Edition, Section 2567. In 91 C.J.S., Vendor and Purchaser, § 121 c, it is said:

"Abandonment by the purchaser is shown, however, where he positively and absolutely refuses to perform the conditions of the contract, as by a failure to make payments due, accompanied by other circumstances, or brings an adverse action against the vendor, * * *."

In Dundas v. Foster, 281 Mich. 117, 274 N.W. 731, 732, it is said:

" 'Abandonment by the purchaser is shown * * * where he positively and absolutely refuses to perform the conditions of the contract, such as a failure to make payments due, accompanied by other circumstances * * * or where by his conduct he clearly shows an intention to abandon the contract.' "

The foregoing is quoted with approval in Tiley v. Chapman, 320 Mich. 173, 30 N. W.2d 824.

In Graves v. White, 87 N.Y. 463, the plaintiff and the defendant's grantor entered into a contract for the exchange of land. The defendant refused to consummate the exchange and retained possession of both parcels of land claiming to own them both. The plaintiff brought an action in ejectment. The defendant attempted to set up the exchange contract as a defense. The court said:

"* * * a mere neglect to perform might sometimes amount only to a breach, and fall short of an election to abandon, which the assent of the other party might make effective, a positive and absolute refusal, a deliberate repudiation of the stipulations of the contract, gives to the other party as an alternative remedy the right to assent to such abandonment and treat the contract as dissolved."

It was therefore held that the defendant had practically abandoned the contract and could not enforce it by specific performance or rely on it as a defense and that the plaintiff was at liberty to maintain ejectment and that by so doing she gave her assent to the abandonment of the contract.

Mathwig v. Ostrand, 132 Minn. 346, 157 N.W. 589, involved an action to enforce the specific performance of a contract to convey farm land. The plaintiff was denied relief because the contract was found to have been mutually abandoned. In the opinion the court laid down these legal principles: The vendee in a contract for the sale of land may abandon his unperfected equitable title. The statutory method providing for the termination of rights of the vendee in a land contract because of default in performance does not relieve the vendee from the effect of an abandonment which the vendor may elect to treat as such and by acquiescing therein bring about a mutual abandonment and termination of the contract.

We will now briefly review the position of the parties bearing in mind that although Engen and Kincannon may not have started out in concert or in conspiracy Engen acted throughout this transaction for the benefit of Kincannon who has by his conduct clearly acquiesced in and ratified such action on Engen's part. 1. Kincannon made no payments on the contract nor did he in any way contact the administratrix of the vendor after March 11, 1927, although all of the purchase price became finally due on June 1, 1929. 2. He made no payment of taxes levied subsequent to 1928. 3. He ignored the notice of expiration of redemption served on him in May 1940 in connection with tax deed proceedings instituted by Mountrail County. 4. He did not attempt to notify the representatives of the estate of the vendor that tax deed proceedings had been instituted although T. L. Kincannon, his father, was resident agent of the administratrix of the estate. 5. On March 3, 1941, he entered into a written contract with Mountrail County leasing the land until October 1, 1941. 6. On August 15, 1943, Millard Kincannon was personally served by the sheriff of Mountrail County with the summons and complaint in this action to quiet title brought by Otto Engen. Kincannon made no appearance in the action and permitted judgment to be taken against him by default adjudging him to have no estate, right, title, or interest in the property and forever enjoining him from further asserting any right, title, or interest in the property or any part thereof. 7. Although on February 28, 1952, the judgment was opened up with respect to the estate of Anna L. Kincannon, the vendor, and the administratrix was permitted to file an answer, Kincannon made no attempt to be relieved of his default or assert any rights under the contract. 8. It was not until after the administratrix had filed her answer alleging that the court had determined that Millard Kincannon had no right,

title, or interest in the property that he executed an assignment to the plaintiff Otto Engen. 9. Kincannon has not appeared in any manner in this case other than as a witness.

From March 11, 1927, to April 15, 1952, when Kincannon assigned the contract for deed to Engen, a period of over 25 years, Kincannon ignored both his obligations and his rights under the contract with respect to the vendor, Mountrail County, and Engen. His undisputed conduct clearly evidences an intention to abandon the contract. On the other hand, Alta Cochrane as administratrix and sole heir of Anna L. Kincannon acquiesced in that abandonment. She never attempted to enforce the contract against Kincannon nor does it appear that she ever demanded compliance. Her election to accept the abandonment is clearly evidenced by her answer in which she sought an accounting for the crops and in which she pleaded that part of the judgment already rendered in this action quieting title against Kincannon. We therefore reach the conclusion that when Kincannon attempted to assign the contract to Engen he had already abandoned it and his abandonment had been accepted. The contract was out of existence. There was nothing for him to assign.

Engen's position with respect to the title can be no better than that of Kincannon for whose benefit he acted. Engen has also placed himself in a procedural position which in the opinion of the writer is fatal to his right to prevail in this action. Although not bound by the original judgment because of invalid service, the administratrix became a party to this action by having the judgment opened up as to her and filing an answer in which she elected to adopt the adjudication that was made against Kincannon. Neither he nor Engen made any effort to have that adjudication set aside or modified. By his reply Engen completely ignores that part of the judgment which he had obtained against Kincannon and pleads that he is the owner by assignment of the contract against which he had quieted title. To further complicate his position in his testimony he still insists that he holds the legal title for the benefit of Kincannon and that the only interest he has in the land is the money that he has paid out.

The situation that was before the court in the case of Burke v. Scharf, 19 N.D. 227, 124 N.W. 79, 83, is somewhat comparable to that now before the court. In that case Brown sold a tract of land on contract to Scharf who went into possession. Brown then gave a quitclaim deed to Burke who thereby succeeded to the vendor's interest in the land. Burke served the statutory notice of cancelation of the contract on Scharf who was then in default. Deutz also claimed to be the owner of the land through another chain of title. Scharf failed to make good his default under the contract and permitted it to be canceled. He took a deed from Deutz and under it claimed to be the owner of a title superior to that which Burke had obtained from Brown. The Deutz title proved to have been based upon a prior champertous void conveyance and Scharf's title therefore failed. The court refused Scharf equitable relief and stated:

> "By repudiating the contract with Brown and taking a void conveyance from Deutz, he acted at his own risk, and is not entitled to any equitable consideration by reason of the fact that he secured no rights to this land from Deutz."

In this case the equitable positions of the plaintiff and his brother-in-law Kincannon with respect to the title are less appealing than was the position of Scharf. The trial court determined that the plaintiff was not entitled to equitable relief and quieted title in the heir of the vendor. We agree with the trial court.

The defendant Alta Cochrane in an attempted cross-appeal complains that the court refused to undertake an account-

ing between Alta Cochrane and the co-defendant Millard Kincannon with respect to the crops produced and retained by him and limited the inquiry of this action to property and proceeds of the land received by the plaintiff Engen. As we have pointed out, the judgment was never opened up as to Kincannon. Neither the motion papers nor the answer appeared to have been served on him. He filed no pleadings. While he was a witness, it does not appear that he was a party to any issues with respect to crops. The court properly limited the inquiry in this action to property and proceeds of the land received by the plaintiff Engen on whom alone the answer was served.

The defendant and respondent Alta Cochrane, as administratrix and as sole heir of the deceased, challenges the trial court's determination that the money paid by the plaintiff for the tax title and for taxes is entirely offset by the money which he received from the oil and gas lease. This determination was based on the following finding:

"That the plaintiff, Otto Engen, expended the sum of One Thousand Eighty Dollars ($1080.00) in acquiring the tax titles to said lands, and has paid subsequent taxes for the years 1941 to 1953 inclusive, in the additional sum of Nine Hundred Forty-six Dollars Eighty-eight Cents ($946.88), and has paid a further sum for taxes in the past two years of approximately Two Hundred Eighty Dollars ($280.00), which amounts plaintiff is entitled to recover from defendant, Alta Cochrane, by reason of the failure of his tax titles. That the plaintiff, in open court, offered and consented that the sum of One Thousand Nine Hundred Twenty Dollars, ($1,920.00), received by him for an oil and gas lease, was and is accepted by him in full consideration for all money paid for the tax titles and subsequent taxes, and that

plaintiff made no claim against defendant, Alta Cochrane, for the excess of the money so disbursed by plaintiff."

The respondent insists that she is entitled not only to the land but also to the money which Engen received for the lease and that the court erred in permitting an offset in his favor for the amount which he paid out in procuring the void tax title and in paying subsequent taxes.

Mountrail County obtained tax deeds to this land on October 1, 1940. Presumably it was offered for sale at public sale in November 1941 and 1942. See Sections 57–2810 to 57–2815, NDRC 1943. There being no purchasers at public sale it was available for purchase at private sale. After Engen learned that other people were interested in buying the land he made the purchase in June 1943. It is apparent that he did not rush to purchase the land as soon as the county acquired its deed. We have held that the circumstances under which the purchase was made do not warrant a finding of actual fraud and conspiracy although it was in violation of equitable principles.

With respect to the legal title the equities preponderate in favor of Alta Cochrane and the estate of which she is administratrix. Her mother was the owner of the legal title which she inherited subject to administration. Although Millard Kincannon had the contractual duty to pay taxes under the contract which we have held he abandoned hers was the primary duty to Mountrail County to see that the taxes were paid. Her position with respect to the equities between her and Engen is tainted with lack of diligence and inattention. She testified that she assumed the taxes were paid until she discovered otherwise in 1951. While this lapse does not weaken her position with respect to title to the land it does weaken her claim to equitable relief from the claim of Engen to the taxes which he paid on her land. We do not believe that justice requires that En-

gen should lose what he has paid as a legal obligation against the land for which she has received the sole benefit. Under all the circumstances surrounding this transaction, we believe that the trial court's determination to offset the amount which Engen has paid under his ostensible but invalid title against the amount that he received from the oil lease is just and equitable. The judgment appealed from is affirmed.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.